**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | | |
|---|---|---|
| **IN RE** | ) | **Case No. 20-10616** |
| **RWDY, INC.** | ) | **Chapter 11** |
| **Debtor** | ) | **Judge JSH** |

**FIRST AMENDED APPLICATION TO EMPLOY STOUT RISIUS ROSS, LLC AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF RWDY, INC.**

---

**A hearing to consider the Application to Employ Stout Risius Ross, LLC as Financial Advisor to the Official Committee of Unsecured Creditors of RWDY, Inc. will be held on Tuesday, December 2, 2020 at 10:00 o'clock, a.m. at the Tom Stagg United States Court House, Courtroom 4, 300 Fannin Street, Shreveport, Louisiana**

---

The Official Committee of Unsecured Creditors ("Committee") of RWDY, Inc. ("Debtor"), hereby submits this amended application (the "Amended Application") for entry of an order pursuant to section 1103 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the employment and retention of John D. Baumgartner and Stout Risius Ross, LLC (together with its and its affiliates' and wholly-owned subsidiaries' respective agents, independent contractors, and employees, "Stout" or "Applicant"), as financial advisor to the Committee, effective as of October 6, 2020. In support of this Application, the Committee respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The bases for the relief requested herein are Bankruptcy Code § and 1103(a), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1(b)(1) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Western District of Louisiana (the "Local Rules").

## BACKGROUND

3. On June 22, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Louisiana (the "Court").

4. The Debtor continues to operate its business as a debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request has been made for the appointment of a trustee or an examiner.

5. On July 15, 2020 (the "Formation Date"), the Acting United States Trustee for Region 5 (the "U.S. Trustee") appointed the Committee pursuant to Bankruptcy Code section 1102. The Notice of Appointment of Unsecured Creditors' Committee (Rec. Doc. 86) was filed on July 15, 2020.

6. On October 6, 2020, the Committee selected Stout to provide financial advisory services to the Committee. On October 26, 2020, the Committee filed its Application to Employ Stout Risius Ross, LLC as Financial Advisor to the Official Committee of Unsecured Creditors of RWDY, Inc. (Rec. Doc. 163) (the "Application"). On November 13, 2020, both the Debtor and

its lender Seacoast Business Funding filed objections to the Application. *See*, Rec. Docs. 183 and 186.

7. After review of the objections, the Committee requested Stout amend its engagement letter and agree to have the engagement reviewed under the fee approval standards of 11 U.S.C. § 330(a) rather than 11 U.S.C. § 328(a). Stout agreed and issued an amended engagement letter superseding the prior form on November 18, 2020. and the Committee approved such amended engagement letter. A copy of such amended engagement letter is attached hereto as **Exhibit "A."**

## RELIEF REQUESTED

8. By this Amended Application, the Committee requests entry of an order, in the form attached hereto as **Exhibit B**, pursuant to Bankruptcy Code section 1103(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a), approving the employment and retention of Stout as financial advisor to the Committee in this chapter 11 case, effective October 6, 2020, pursuant to Local Rule 2014-1(b)(1).

9. Rule 2014(a) requires that this Amended Application evidence (a) the specific facts showing the necessity for the employment, (b) the name of the person to be employed, (c) the reasons for the selection, (d) the professional services to be rendered, (e) any proposed arrangement for compensation, and, (f) to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

## NECESSITY FOR EMPLOYMENT OF STOUT AND REASONS FOR SELECTION

10. The Committee is familiar with the professional standing and reputation of Stout. The Committee understands and recognizes that Stout has a wealth of experience in providing

financial advisory services in restructurings and reorganizations and enjoys an excellent reputation for services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States.

11. The services of Stout are deemed necessary to enable the Committee to assess and monitor the efforts of Debtor and its professional advisors to maximize the value of its estate and to reorganize successfully. Further, Stout is well qualified and able to represent the Committee in a cost-effective, efficient, and timely manner.

12. Stout's engagement on behalf of the Committee has been heavily negotiated, resulting in a significant reduction in rates from Stout's standard hourly rates with approval of fees subject to this Court's review under 11 U.S.C. § 330(a) for reasonableness. Further, Stout has agreed to the elimination of its standard indemnification requirements.

**SCOPE OF PROFESSIONSAL SERVICES**

13. The Committee and Stout arrived at a mutual agreement as to the substantial efforts that will be required in this engagement, as described herein. Subject to further order of the Court, Stout will provide such advisory services to the Committee and its legal advisors as Stout and the Committee deem appropriate and feasible over the course of this chapter 11 case, including but not limited to the following:

a) Analysis of the Debtor's general financial and business condition, including an analysis of current asset and liabilities, PP&E and other "soft" assets.

b) Review and critique of the Debtor's financial projections and assumptions.

c) Review of the Debtor's financial information, including, but not limited to, analyses of cash receipts and disbursements, financial statement items and proposed transactions for which Court approval is sought.

d) Financial advisory services including the preparation of a liquidation analysis, and a monthly analysis of the Debtor's financial information (including analysis of significant changes financially, operationally, or otherwise).

e) Review and analysis of the reporting regarding cash collateral and any debtor-in-possession financing arrangements and budgets.

f) Attend Committee meetings to discuss Stout's analyses.

g) Review of filings required by the Court or U.S. Trustee, including, but not limited to, schedules of assets and liabilities, statements of financial affairs, and monthly operating reports.

h) Review and analysis of the Debtor's proposed business plan.

i) Assistance in evaluating reorganization strategies and alternatives available to the creditors.

j) Assistance in preparing and/or reviewing documents necessary for confirmation.

k) Advise and assist the Committee in negotiations and meetings with the Debtor, lenders, and customers.

l) Advise and assist the Committee regarding tax consequences of proposed actions, including plans of reorganization.

m) Determination of the Debtor's enterprise value as of the petition date and as of the effective date of a Chapter 11 plan of reorganization (the "Valuation Dates").

n) Determination of asset and liquidation valuations.

o) Expert witness report and testimony regarding the Debtor's enterprise valuation, the valuation of any securities proposed to be issued under any Chapter 11 plan of reorganization for the Debtor, confirmation issues, or other matters.

p) Litigation consulting services and expert witness testimony regarding confirmation issues, avoidance actions, or other matters.

q) Other such functions as requested by the Committee or its counsel to assist the Committee in this Chapter 11 case.

14. In order for Stout to perform the services set forth above, it will be necessary for Stout personnel to have access to certain books, records, and reports of the Debtor and to have discussions with the Debtor's personnel. Accordingly, the Committee understands that, to the extent Stout is not given the Debtor's cooperation or access to the Debtor's personnel, books and

records, and other sources of data, Stout's ability to provide the services set forth above will be limited.

15. It is understood by the Committee that Stout is not being requested to perform an audit and that Stout will rely on the accuracy and validity of the data disclosed to Stout or supplied to Stout, by or on behalf of, employees and representatives of the Debtor or the Committee. Stout is not updating, nor is Stout under any obligation to update, data submitted to Stout or reviewing any other areas unless specifically requested by the Committee.

16. The Committee understands that the services to be rendered may include a review and assessment of projections and other forward-looking statements and that numerous factors can affect the actual results of the Debtor's operations, which may materially and adversely differ from those projections and other forward-looking statements.

17. All advice (written or oral) provided by Stout to the Committee in connection with this engagement is intended solely for the benefit and use of the Committee in considering the matters to which this engagement relates.

18. The Committee believes that the services to be provided by Stout will not duplicate the services that other professionals will be provided to the Committee in this chapter 11 case. Specifically, Stout will carry out unique functions and will use reasonable efforts to coordinate with the Committee, Committee's counsel, and any other professionals retained in this chapter 11 case to avoid the unnecessary duplication of service.

**PROFESSIONAL COMPENSATION**

19. The Committee has agreed to the following compensation for the services to be provided by Stout in this chapter 11 case:

| **Individual** | **Hourly Rate** |
|---|---|
| John D. Baumgartner-Managing Director | $415.00 |

| Ann Huynh-Director | $385.00 |
| --- | --- |
| Hayden Hill, Associate | $210.00 |

20. For billing purposes, Stout shall keep its time in one-tenth (1/10) hour increments, all billing records filed in support of any fee applications will include an open and searchable LEDES or other electronic data format, and billing records will use standard bankruptcy project categories consistent with the US Trustee's guidelines. Stout shall provide ten-business-days' notice to the Committee, the Debtor, and the U.S. Trustee before any increases in the rates set forth in the Application are implemented and/or any contingency fee arrangements agreed to between Stout and the Committee on all grounds, including but not limited to, the reasonableness standard provided for in § 330 of the Bankruptcy Code, and the Court will retain the right to review any rate increase agreed to between Stout and the Committee pursuant to § 330 of the Bankruptcy Code.

21. Further, Stout will be reimbursed for reasonable expenses incurred in connection with this engagement, such as travel expenses, duplicating charges (including graphic design charges), on-line service charges (including data room charges), messenger and delivery services, meeting services and long-distance telephone and facsimile charges incurred by Stout.

22. The proposed order provides that Stout shall file applications for interim and final allowance compensation and reimbursement of expenses pursuant to the procedures set forth in Bankruptcy Code sections 330 and 331, such Bankruptcy Rules as may then be applicable, and any applicable order and procedures of this Court.

**STOUT'S RELATIONSHIPS AND CONFLICTS DISCLOSURES**

23. Attached as **Exhibit C** is the Rule 2014(a) verified statement of John D. Baumgartner setting forth Stout's connections with the Debtor, creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in

the office of the U.S. Trustee (the "Baumgartner Statement"). Attached as **Exhibit D** is a list of parties included in Stout's conflicts check. Attached as **Exhibit E** is a list detailing the results of Stout's conflicts check, which further outlines Stout's connections with the Debtor and other parties in interest in this case.

24. Based on Exhibits C, D, and E to this Application, the Committee believes that Stout has no connections with the Debtor, its creditors, or other parties in interest, except as set forth in the Baumgartner Statement. Pursuant to Bankruptcy Code section 1103(b), the Committee believes that, except as set forth in the Baumgartner Statement, Stout does not represent any other entity having an adverse interest in connection with the chapter 11 case.

25. Stout has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with this case.

**SATISFACTION OF LOCAL RULE 2014-1(b)(1)**

26. Local Rule 2014(b)(1) provides that if a motion for approval of employment of a professional is made within thirty (30) days of that professional commencing work, it is deemed contemporaneous. The original Application was filed within thirty (30) days after the Committee's employment of Stout, and the request made in this Amended Application should relate back to the filing of the original Application. The Committee therefore submits that the criteria set forth in Local Rule 2014-1(b)(1) have been satisfied.

**NO PRIOR REQUEST**

27. This Amended Application supersedes and modifies the original Application, but relates back to the date of filing of such original Application. Prior to the filing of the original application, no prior application for the relief requested herein has been made to this or any other court. This Court has not previously denied any application requesting the relief sought herein.

**WHEREFORE**, the Committee respectfully requests that the Court enter an order granting the relief requested herein and such other and further relief as the Court may deem appropriate.


Respectfully Submitted,
**STEWART ROBBINS BROWN & ALTAZAN, LLC**
301 Main Street, Suite 1640
P. O. Box 2348
Baton Rouge, LA 70821-2348
(225) 231-9998 Telephone
(225) 709-9467 Fax

By: /s/ *Paul Douglas Stewart, Jr.*
Paul Douglas Stewart, Jr. (La. #24661)
dstewart@stewartrobbins.com
Jamie D. Cangelosi (La. #26862)
jcangelosi@stewartrobbins.com
***Counsel for the Official Committee of Unsecured Creditors of RWDY, Inc.***

# EXHIBIT A
# AMENDED ENGAGEMENT LETTER





**PRIVILEGED AND CONFIDENTIAL**

November 18, 2020

Mr. Doug Stewart
Counsel to Official Committee of Unsecured Creditors of RWDY, Inc.
c/o Stewart Robbins Brown & Altazan LLC
301 Main Street
Suite 1640
Baton Rouge, Louisiana 70801

RE: Financial Advisors to the Official Committee of Unsecured Creditors of RWDY, Inc.

Dear Mr. Stewart:

Thank you for selecting Stout Risius Ross, LLC ("Stout") to provide financial advisory services to the Official Committee of Unsecured Creditors (the "Committee") of RWDY, Inc. (the "Debtor" or the "Company"). This letter shall confirm the understanding of the Committee (the "Engagement Letter") concerning the engagement of Stout, the services to be provided by Stout and the manner in which Stout will be compensated for these services, effective as of October 6, 2020 (the "Effective Date").

Objectives and Scope

Subject to the Court's approval of Stout's Employment Application, Stout will serve as the Committee's financial advisors to perform the services described below as well as any other services requested by the Committee.

1. Analysis of the Debtor's general financial and business condition, including an analysis of current assets and liabilities, PP&E and other "soft" assets.
2. Review and critique of the Debtor's financial projections and assumptions.
3. Review of the Debtor's financial information, including, but not limited to, analyses of cash receipts and disbursements, financial statement items and proposed transactions for which Bankruptcy Court approval is sought.
4. Financial advisory services including the preparation of a liquidation analysis, and a monthly analysis of the Debtor's financial information (including analysis of significant changes financially, operationally or otherwise).
5. Review and analysis of the reporting regarding cash collateral and any debtor-in-possession financing arrangements and budgets.
6. Attend Committee meetings to discuss Stout's analyses.
7. Review of filings required by the Bankruptcy Court or the Office of the United States Trustee, including, but not limited to, schedules of assets and liabilities, statements of financial affairs and monthly operating reports.



8. Review and analysis of the Debtor's proposed business plan.

9. Assistance in evaluating reorganization strategies and alternatives available to the creditors.

10. Assistance in preparing and/or reviewing documents necessary for confirmation.

11. Advise and assist the Committee in negotiations and meetings with the Debtor, lenders, and customers.

12. Advise and assist the Committee regarding tax consequences of proposed actions, including plans of reorganization.

13. Determination of the Debtor's enterprise value as of the petition date and as of the effective date of a Chapter 11 plan of reorganization (the "Valuation Dates").

14. Expert witness report and testimony regarding the Debtor's enterprise valuation, the valuation of any securities proposed to be issued under any Chapter 11 plan of reorganization for the Debtor, confirmation issues, or other matters.

15. Litigation consulting services and expert witness testimony regarding confirmation issues, avoidance actions or other matters.

16. Other such functions as requested by the Committee or its counsel to assist the Committee in this Chapter 11 case.

The Committee and Stout agree that the Committee may limit or expand the scope of our representation from time to time on terms mutually acceptable to the parties in writing.

This engagement will be under the supervision of John D. Baumgartner.

## Fees and Expenses

In consideration of the services Stout provides to the Committee pursuant to this Engagement Letter, Stout shall be entitled to receive, and the Company shall pay to Stout, the following compensation, subject to Bankruptcy Court approval:

1. For this engagement, Stout will bill time as incurred on a monthly basis at the following hourly rates, depending on the experience level of each professional. Stout's practice is utilize the lowest cost, most efficient professional. Stout's rates are typically revised on October 1st of each year. For this engagement, Stout proposes the following rates to be in effect through September 30, 2021.

| Professional | Level | Rates |
|---|---|---|
| John D. Baumgartner | Managing Director | $415 per hour |
| If needed | Directors | $355 - $385 per hour |
| If needed | Managers | $210 - $360 per hour |
| Hayden Hill | Associates | $210 per hour |

| Professional | Level | Rates |
|---|---|---|
| If needed | Analysts | $150 - $225 per hour |
| | Para-professionals | $110 per hour |

2. In addition to the fees described above, the Company agrees to promptly reimburse Stout, upon request from time to time, for all out-of-pocket expenses reasonably incurred by Stout in connection with the matters contemplated by this Engagement Letter including, without limitation, reasonable fees of counsel. Out-of-pocket expenses shall include, but not be limited to, all reasonable travel expenses, duplicating charges (including graphic design charges), on-line service charges (including data room charges), messenger and delivery services, meeting services and long-distance telephone and facsimile charges incurred by Stout.

Wire Transfer

All payments required hereunder shall be paid by wire transfer unless otherwise permitted by us. Set forth below are our funds transfer instructions:

Stout Risius Ross, LLC
BMO Harris Bank

ACH & Wire ABA Number: 071000288
Account Number: 3998895

Bankruptcy Court Authorization

The Committee, as soon as practicable following the execution of this Engagement Letter by the Committee, shall seek an order authorizing the employment of Stout pursuant to the terms of this Engagement Letter, as a professional person pursuant to (and subject to the standard of review of) Section 330 of the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders. This letter supersedes the prior letter dated October 6, 2020.The Committee shall use its best efforts to cause such application to be considered promptly. The employment application and the order authorizing employment of Stout shall be provided to Stout sufficiently in advance of their filing, and must be acceptable to Stout in its discretion. If the order authorizing the employment of Stout is obtained, Stout shall seek payment from the Debtor's bankruptcy estateas promptly as possible in accordance with the terms of this Engagement Letter, any orders entered in the Chapter 11 case regarding reimbursement of professionals, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and the Committee will work with Stout to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. If the order authorizing the employment of Stout is not obtained (or is later reversed or set aside for any reason), Stout may terminate this Engagement Letter and the Company shall reimburse Stout for all fees and expenses reasonably incurred prior to the date of termination, subject to the requirements of the Bankruptcy Code, Bankruptcy Rules and applicable local rules and orders and allowance by the Bankruptcy Court. The terms of this paragraph are solely for the benefit of Stout and may be waived, in whole or in part, only by Stout.



## Term of Engagement

This Engagement Letter shall extend until the entry of an order by the Bankruptcy Court approving a Chapter 11 plan of reorganization (the "Plan Approval Date") unless earlier terminated upon thirty (30) days' written notice by the Committee. After the Plan Approval Date, this Engagement Letter may be terminated by either the Committee or Stout upon thirty (30) days' written notice by the Committee or Stout without liability or continuing obligation; provided, however, that termination of this Engagement Letter shall not affect (a) the confidentiality provisions set forth herein; and (b) Stout's right to receive, and the Company's obligation to pay, any and all fees and expenses accrued as of the effective date of termination of this Engagement Letter.

## Entire Agreement, Waiver, Modification, and Notices

This Engagement Letter, including any Exhibits, constitutes the final and complete expression of the parties with respect to its subject matter and supersedes and replaces any other written or oral agreement or understanding between the parties. This Engagement Letter may be amended, modified, supplemented or waived only by a written instrument signed by both parties. No waiver of a breach hereof shall be deemed to constitute a waiver of a future breach, whether of a similar or a dissimilar nature. All notices, demands or other communications which are required or are permitted to be given in this Agreement shall be in writing and shall be deemed to have been sufficiently given (i) upon personal delivery, (ii) the third business day following due deposit in the U.S. mail, postage prepaid, and sent certified mail, return receipt requested, correctly addressed or (iii) when receipt is acknowledged if sent via facsimile transmission. Notices to the Committee shall be sent to the address set forth on page one of this Engagement Letter.

To the extent of any inconsistency between the terms of this Engagement Letter (including the attached Professional Terms), and any Order of the Bankruptcy Court, the Order of the Bankruptcy Court authorizing our employment shall govern.

* * * * * *



Please indicate your agreement with the terms of this letter (including the Professional Terms), subject to approval of the Bankruptcy Court, by signing and returning to me the enclosed copy of this letter. We appreciate the opportunity to be of service to you and look forward to working with you on this important project. Please note that this offer will terminate 60 days from the date of this letter, and shall be of no further force or effect unless expressly reinstated by us.

Very truly yours,

**STOUT RISIUS ROSS, LLC**

By: John D Baumgartner

Attachments: Professional Terms

Acknowledged and Accepted:

**Official Committee of Unsecured Creditors of RWDY, Inc.**

Signed: [signature]

Name: Andrew Lichtenstein

Title: Chairman

Date: 11/23/20

# STOUT RISIUS ROSS, LLC PROFESSIONAL TERMS

**1. Our Services** We will provide the services as described in our engagement letter, as may be modified from time to time by mutual consent.

**2. Independent Contractor** We are an independent contractor and not your employee, agent, joint venturer or partner, and will determine the method, details and means of performing our services. We assume full and sole responsibility for the payment of all compensation and expenses of our employees and for all of their state and federal income tax, unemployment insurance, Social Security, disability insurance and other applicable employee withholdings.

**3. Fees and Expenses** Our fees, out-of-pocket expenses, and payment terms are set out in our engagement letter. Those fees do not include taxes. You will be responsible for and pay all applicable sales, use, excise, value added and other taxes associated with the provision or receipt of the services, excluding taxes on our income generally.

**4. Confidentiality** With respect to any information supplied in connection with this engagement and designated by any party as confidential, or which the other party(s) should reasonably believe is confidential based on its subject matter or the circumstances of its disclosure, the other party(s) agree to protect the confidential information in a reasonable and appropriate manner, and use confidential information only to perform its obligations under this engagement and for no other purpose. This will not apply to information which is: (i) publicly known, (ii) already known to the recipient, (iii) disclosed by a third party without restriction, (iv) independently developed, or (v) disclosed pursuant to legal requirement or order. Following the completion of our engagement, but not before such time, we may mention the name of the Company and/or use the Company logo and provide a general description of the engagement in our printed or electronic materials, or in our marketing presentations to others.

We are not to be characterized as an "expert" for purposes of securities law and we are not to be referred to, either by name or inference, in any public (e.g., S-1) or nonpublic security filing or private placement. (Any such disclosure document is defined herein as a "Filing".) Moreover, we are not obligated to provide, nor will we provide, any consent to be named in any such Filing either during the performance of our services or after the conclusion of our engagement.

**5. Use of Financial & Other Information / GAAS** In the course of our engagement, we will use financial and other information, including prospective financial information, obtained from you, the Company, and/or your representatives, and other public and private sources. The scope of our work will not enable us to accept responsibility for the accuracy and completeness of such information, and it is understood that we will have no duty of independent investigation or verification of such information. While our work may involve analysis of various records, our engagement does not include an examination in accordance with generally accepted auditing standards known as "GAAS." Furthermore, we will take no responsibility for the achievability of any expected, forecasted, projected, or hypothetical results anticipated or assumed by the management of the Company, whether relied upon by us or not.

**6. Our Work Product and Your License** Upon full payment of all amounts due us in connection with this engagement, the work product prepared by us for you in connection with our services will become your property, except as set forth below. Our work papers will not constitute work product and will remain our sole and exclusive property. We will retain sole and exclusive ownership of all right, title and interest in our proprietary information which will not constitute work product, including such information as existed prior to the delivery of our services and, to the extent such information is of general application, anything which we may discover, create or develop during our provision of services for you. To the extent our deliverables to you contain our proprietary information, we grant you a non-exclusive, non-assignable, royalty-free license to use the proprietary information provided by us in the work product and the subject of the engagement and for no other or further use without our express, prior written consent.

**7. Our Warranty** We warrant that our services will be performed with reasonable care in a diligent and competent manner. Our sole obligation will be to correct any non-conformance with this warranty, provided that you give us written notice within 60 days after the services are performed or, if applicable, deliverables are delivered. The notice will specify and detail the non-conformance and, if you and we agree that a non-conformance exists, we will have a reasonable amount of time, based on its severity and complexity, to correct the non-conformance.

We do not warrant and are not responsible for any third party products or services. Your sole and exclusive rights and remedies with respect to any third party products or services are against the third party vendor and not against us.

THIS WARRANTY IS OUR ONLY WARRANTY CONCERNING THE SERVICES AND ANY DELIVERABLE, AND IS MADE EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT, OR FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE.

**8. Liability and Indemnification** (a) Reserved.

(b) Neither of us will be liable for any delays or failures in performance due to circumstances beyond our reasonable control.

(c) Our total liability relating to this engagement will in no event exceed an amount equal to the fees we receive for the portion of the engagement giving rise to liability, and will not include any special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity).

(d) Any action against either of us by the other in connection with this engagement must be brought within 18 months after the cause of action arises.

**9. Response to Subpoena** In the event we are required to respond to a subpoena (e.g., producing documents in our possession, providing testimony, cooperating with your legal counsel, etc.) related to this engagement (regardless of whether such subpoena is served during or subsequent to the completion of our work), we will invoice you at our standard hourly rates applicable at the time such services are rendered. We will also invoice you for our related out-of-pocket expenses, including, but not limited to, copying charges, courier fees, travel expenses and attorney fees.

**10. Non-Solicitation** During the term of this engagement, and for a period of one year following its expiration or termination, you will not actively solicit, employ or otherwise engage any of our employees (including former employees) who were involved directly in the engagement.

**11. Termination** (a) Any party may terminate our engagement at any time upon 10 days written notice.

(b) Stout Risius Ross, LLC may suspend or terminate this engagement immediately and without notice in the event of non-payment of amounts due us.

(c) You will pay us for all services rendered, expenses incurred or commitments made by us to the effective date of termination, and will reimburse us for all reasonable costs associated with any termination.

**12. Our Financial Interest / Compensation** None of our employees who will work on this engagement have any known financial interest in the Company or the outcome of our analysis, and our compensation is neither based upon nor contingent upon the conclusions we reach. We do not warrant or predict results or final developments in this matter.

**13. Staffing** While we will attempt to comply with your requests for specific individuals, we retain the right to assign and reassign our personnel, as appropriate, to perform the services.

**14. General** (a) These Professional Terms, together with the engagement letter, including all its attachments, constitute the entire understanding and agreement between us with respect to the services and deliverables described in the engagement letter, supersede all prior oral and written communications between us, and may be amended, modified or changed only in writing when signed by all parties. If there is a conflict between these Professional Terms and the terms of the engagement letter, these Professional Terms will govern.

(b) No term of this agreement will be deemed waived, and no breach of this agreement excused, unless the waiver or consent is in writing signed by the party granting such waiver or consent.

(c) The terms of this agreement which by their nature are to survive this agreement will survive its expiration or termination.

(d) We will retain files related to this engagement in accordance with our document retention policy.

(e) We each acknowledge that we may correspond or convey documentation via Internet e-mail and that none of the parties has control over the performance, reliability, availability, or security of Internet e-mail. Therefore, none of the parties will be liable for any loss, damage, expense, harm or inconvenience resulting from the loss, delay, interception, corruption, or alteration of any Internet e-mail due to any reason beyond our reasonable control.

(f) We are not authorized to practice law or provide legal advice. No services provided under this agreement are intended to be, nor should be construed to be, legal services.

(g) Any delay or failure on our part to perform the obligations provided herein shall be excused if we are unable to provide the deliverable as the result of an event or occurrence beyond our reasonable control and without our fault or negligence, including, but not limited to, acts of God, actions by any governmental authority (whether valid or invalid), fires, floods, windstorms, epidemics, pandemics, explosions, riots, natural disasters, wars, sabotage, labor problems (including lockouts, strikes and slowdowns); provided that written notice of such delay (including the anticipated duration of the delay) shall be given to the Company as soon as possible after the event or occurrence (but in no event more than 10 days thereafter). If requested by Company, we shall, within 10 days, provide adequate assurances that the delay shall not exceed 30 days. If the delay lasts more than 30 days or we do not provide adequate assurance that the delay will cease within 30 days, Company may immediately terminate this agreement without liability beyond the time and expenses incurred to date.

(h) All of our respective rights and duties and all controversies and claims in connection with this engagement will be determined in accordance with the laws of the State of Louisiana.

* * * * * *

**EXHIBIT B**
**PROPOSED ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | | |
|---|---|---|
| **IN RE** | ) | **Case No. 20-10616** |
| **RWDY, INC.** | ) | **Chapter 11** |
| **Debtor** | ) | **JUDGE JSH** |

**[PROPOSED] ORDER AUTHORIZING EMPLOYMENT OF STOUT RISIUS ROSS, LLC AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF RWDY, INC.**

Upon the Application [P-163] (the "Application"), as amended [P-___] (the "Amended Application") of the Official Committee of Unsecured Creditors (the "Committee") of RWDY, Inc. (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), for entry of an order authorizing the Committee to employ Stout Risius Ross, LLC ("Stout" or "Applicant") as financial advisor to the Committee in this Chapter 11 Case, *nunc pro tunc* to October 6, 2020, pursuant to § 1103(a) of title 11 of the United States Code; and upon the Verified Statement of John D. Baumgartner (the "Baumgartner Statement"), attached to the Application and Amended Application as Exhibit C; and the Court having jurisdiction pursuant to §§ 157 and 1334 of title 28 of the United States Code to consider the Application and Amended Application and the relief requested therein; and venue being proper in this Court pursuant to §§ 1408 and 1409 of title 28 of the United States Code; and the Court being satisfied that notice of this Application as amended and the opportunity for a hearing on this Application as amended was appropriate under the particular circumstances and no further or other notice need be given; and the Court being satisfied, based on the representations made in the Application and Amened Application and the Baumgarten Statement, that Stout does not represent or hold any interest adverse to the Debtor or its estate as

to the matters upon which Stout has been and is to be employed, and that Stout is a "disinterested person," as such term is defined in § 101(14) of the Bankruptcy Code; and the Court having determined that the relief sought in the Amended Application is in the best interests of the Committee, the Debtor, its creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED that:

1. The Amended Application is GRANTED to the extent set forth herein.
2. In accordance with § 1103(a) of the Bankruptcy Code and Bankruptcy Rule 2014, the Committee is authorized to employ Stout as its financial advisor, *nunc pro tunc* to October 6, 2020, on the terms and conditions set forth in the Amended Application, as modified herein.
3. Stout shall apply for compensation and reimbursement in accordance with the procedures set forth in §§ 330 and 331 of the Bankruptcy Code, applicable provisions of the Bankruptcy Rules, the Local Rules, and any fee and expense guidelines of this Court. For billing purposes, Stout shall keep its time in one-tenth (1/10) hour increments, all billing records filed in support of any fee applications will include an open and searchable LEDES or other electronic data format, and billing records will use standard bankruptcy project categories consistent with the US Trustee's guidelines.
4. Stout shall provide ten-business-days' notice to the Committee, the Debtor, and the U.S. Trustee before any increases in the rates set forth in the Amended Application are implemented and/or any contingency fee arrangements agreed to between Stout and the Committee on all grounds, including but not limited to, the reasonableness standard provided for in § 330 of the Bankruptcy Code, and the Court will retain the right to

review any rate increase and/or contingency fee arrangements agreed to between Stout and the Committee pursuant to § 330 of the Bankruptcy Code.

5. Stout shall used its reasonable efforts to avoid any duplication of services provided by any of the Committee's other retained professionals in this Chapter 11 Case.

6. To the extent the Application, Amended Application or the Baumgarten Statement is inconsistent with this Order, the terms of this Order shall govern.

7. The Committee and Stout are authorized to take all actions they deem necessary and appropriate to effectuate the relief granted pursuant to this Order in accordance with the Amended Application.

8. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

9. This Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order.

# EXHIBIT C
# VERIFIED STATEMENT

**VERIFIED STATEMENT UNDER PENALTY OF PERJURY**
**OF JOHN D. BAUMGARTNER**
**PURSUANT TO BANKRUPTCY CODE § 1103**
**AND BANKRUPTCY RULE 2014(a)**

John D. Baumgartner hereby states under penalty of perjury:

1. I am a Managing Director of Stout Risius Ross, LLC ("Stout"). I maintain an office at 1000 Main Street, Suite 3200, Houston, Texas, 77002.

2. To the best of my knowledge, the following statements with regard to Stout and the connections of Stout with the relevant entities are true.

3. Stout has never represented creditors, equity interest holders, or any other party in interest in connection with the Debtor's bankruptcy

4. Stout has never represented a professional employed in the Debtor's bankruptcy case, and Stout will not represent any such entities in connection with the Debtor's bankruptcy case.

5. Stout has no connection, to the best of its knowledge, with persons employed in any office of the United States Trustee. For clarity, Stout professionals are regularly employed by the Department of Justice and other Federal agencies in matters unrelated to the Debtor and this case.

6. Stout and its employees are not related to, nor do they have any connections with, judges of the Court to which this case is assigned.

7. Based on my own personal knowledge, the following statements are, to the best of my knowledge, true:

   a. Stout is a disinterested person as defined in 11 U.S.C. § 101(14).

   b. Stout does not have a prepetition claim or any other claim against the Estate.

   c. Stout holds no equity interest in the Debtor.

   d. Neither Stout nor its employees:

      (i) are insiders of the Debtor as defined in 11 U.S.C. § 101(31)(b);

(ii) are investment bankers for any outstanding security of the Debtor;

(iii) have ever been counsel to an investment banker in connection with the offer, sale, or issuance of a security of the Debtor; or

(iv) have been, within two years before the petition date, a director, officer or employee of the Debtor, or an investment banker for an outstanding security of the Debtor.

12. Neither Stout nor its employees hold or represent any interest adverse to the Estate.

13. Neither Stout nor its employees have an interest materially adverse to the interests of the estate of the Debtor or any class of creditors or equity security holders of the Debtor, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or an investment banker of any security of the Debtor or for any other reason.

14. The Application to employ Stout shows the hourly fees to be charged for providing financial advice to the Committee. Additionally, Stout's rates are subject to reasonable and periodic increases from year to year. Stout will charge all costs and advances, subject to the limitation of the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules and orders of this Court. The hourly rates charged by Stout professionals differ based on, among other things, the professional's level of experience. Stout does not charge different billing rates based on the geographic location of the bankruptcy case, but may accept modifications to standard rates due to the unique facts and circumstances of each matter.

15. Stout will bill for its actual and necessary expenses, subject to the limitation of the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules and orders of this Court.

16. I have read the Application and the statements made therein are true and correct to the best of my knowledge, information and belief under penalty of perjury.

/s/ John Baumgartner
John D. Baumgartner

Dated: November 23, 2020

**EXHIBIT D**
**LIST OF PARTIES INCLUDED IN CONFLICTS CHECK**

**Parties Included in Conflicts Check**

The following parties were included in the conflict check:

**The Debtor**
RWDY, Inc.

**Equity Holders**
Brian T. Owen

**Lenders to the Debtor**
Bossier Federal Credit Union
EIBL
Fox Capital Group, Inc.
Seacoast Business Funding
Tailored Fund Cap LLC
United States Small Business Administration

**Unsecured Creditors**
American Express National Bank
AXA Equitable Life Insurance
BDO / BDO USA LLP
Blue Cross Blue Shield of Texas
JPMorgan Chase Bank, N.A.
EIN CAP, Inc.
Everest Indemnity Insurance Company
Everest Premier Insurance Company
Jacob Ashley, Scott P. Kirtley, Riggs Abney
Jason Brazzel
Kenneth Lowery
Maureen Blackburn Jennings
McDermott, Will & Emery
Mr. Advance
Queen Funding, LLC
Tap Rock Operating, LLC
Tap Rock Resources, LLC
Tiger Capital Group
Vernon
Vernon Capital Group, LLC

**Professionals**
Robert W. Raley
Curtis R. Shelton
Stewart Robbins Brown & Altazan, LLC

**Governmental Agencies Appearing in or Related to the Cases**
Colorado Department of Revenue
Internal Revenue Service
Louisiana Department of Revenue
Louisiana Workforce Commission
New Mexico Sales Tax
New Mexico Taxation & Revenue Department
Oklahoma Tax Commission
Texas Workforce Commission

**Other Parties**
The Honorable John S. Hodge
The U.S. Trustee

**EXHIBIT E**
**CONFLICTS CHECK RESULTS**

**Results of Conflicts Check**

The list below details the Potentially Interested Parties with which Stout has, or had within the past three years, a relationship or connection. None of the relationships or connections involved the Debtor.

American Express National Bank
BDO / BDO USA LLP
Blue Cross Blue Shield of Texas
Colorado Department of Revenue
Internal Revenue Service
JPMorgan Chase Bank, N.A.
Louisiana Department of Revenue
Louisiana Workforce Commission
McDermott, Will & Emery
New Mexico Sales Tax
New Mexico Taxation & Revenue Department
Oklahoma Tax Commission
Stewart Robbins Brown & Altazan, LLC
Texas Workforce Commission
United States Small Business Administration