**SO ORDERED.**

**DONE and SIGNED January 21, 2021.**



_____
**JOHN S. HODGE**
**UNITED STATES BANKRUPTCY JUDGE**

---

### In The United States Bankruptcy Court
### Western District of Louisiana Shreveport Division

| | | |
|---|---|---|
| **In the Matter Of**: | } | |
| | } | Case No. 20-10616 |
| RWDY, Inc. | } | |
| | } | Chapter 11 |
| **Debtor** | } | |

## ORDER CONFIRMING DEBTOR'S AMENDED PLAN OF REORGANIZATION WITH IMMATERIAL MODIFICATIONS DATED JANUARY 20, 2021 FILED BY RWDY INC

The Court held the Confirmation Hearing on January 21, 2021 at 9:00 a.m., and considered Confirmation of the Debtor's Amended Plan of Reorganization with Immaterial Modifications Dated January 20, 2021 (Doc. No. 271) filed RWDY, Inc. ("RWDY"). The Court also considered the Disclosure Statement for the Amended Chapter 11 Plan of Reorganization Dated December 23, 2020 (Doc. No. 243) (the "Disclosure Statement") that was previously approved by the Court pursuant to the Order and Notice Approving Disclosure Statement, Fixing Time for Filing Acceptances or Rejections of Plan, Fixing Date for Confirmation Hearing, and

1

Requiring a Tabulation of Voting entered on January 5, 2021 (Doc. No. 248) (the "Order Approving Disclosure Statement").

For oral reasons assigned in open Court on January 21, 2021, the record of the Chapter 11 case, including, without limitation, the testimony proffered and the evidence admitted at the Confirmation Hearing, the Court determined to Confirm the Plan.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

1. **Confirmation**. Pursuant to 11 U.S.C. § 1129, the Plan is hereby CONFIRMED in its entirety regardless of whether specific reference is made herein to a particular article, section, paragraph, exhibit, or provision of the Plan. The terms of the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order.

2. **Effective Date; Conditions Precedent**. The Effective Date of the Plan shall be the later of (i) March 1 2021 or (ii) the first Business Day after all the conditions precedent to the Effective Date have been (a) satisfied or (b) waived in accordance with Article XIII [13.5] of the Plan.

3. **Binding Effect**. Except as otherwise provided in 11 U.S.C. § 1141(d), on and after the Effective Date, the provisions of the Plan, shall bind any and all Holders of Claims against or Equity Interests in RWDY and its successors and assigns whether or not the Claim or Equity Interests of such Holder is Impaired under the Plan and whether or not such Holder has accepted the Plan. Pursuant to Sections 1123(a), 1141(a), and 1142 of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan and all Plan-related documents shall be, and hereby are, valid, binding, and enforceable notwithstanding any otherwise applicable non-bankruptcy law.

4. **Provisions of Plan and Confirmation Order Non-Severable and Mutually Dependent**. The provisions of the Plan and this Confirmation Order, including the Findings and Conclusions, are non-severable and mutually dependent. Any conflict between the Plan and this Confirmation Order shall be resolved by reference to this Confirmation Order.

5. **Effect of Confirmation**. (A) Except as otherwise specifically provided by the Plan and this Confirmation Order, the distributions to Creditors and rights that are provided in the Plan shall be in complete satisfaction and release, effective as of the Confirmation Date (but subject to the occurrence of the Effective Date), of (i) all Claims and Causes of Action against, liabilities of, liens on, obligations of, Interests in RWDY, and the assets and properties of RWDY, whether known or unknown, and (ii) all Causes of Action (whether known or unknown, either directly or derivatively through RWDY) against, Claims (as defined in section 101 of the Bankruptcy Code) against, liabilities (as guarantor of a Claim or otherwise) of, liens on the direct or indirect assets and properties of, and obligations of successors and assigns of, RWDY and its successors and assigns based on the same subject matter as any Claim or Interest or based on any act or omission, transaction, or other activity or security, instrument, or other agreement of any kind or nature occurring, arising, or existing prior to the Effective Date that was or could have been the subject of any Claim or Interest, in each case regardless of whether a Proof of Claim or Interest was Filed, whether or not Allowed and whether or not the Holder of the Claim has voted on the Plan. (B) Notwithstanding anything herein to the contrary, nothing in this Confirmation Order or the Plan shall constitute a release against any person or entity other than RWDY except as specifically set forth in the Plan or this Confirmation Order. (C) Except as otherwise provided herein or in the Plan, upon the occurrence of the Effective Date, RWDY shall be discharged from all Claims to the fullest extent permitted by section 1141 of the Bankruptcy Code, and all

3

Holders of Claims and Equity Interests shall be precluded from asserting against RWDY, Reorganized RWDY, RWDY's Estate, Gross Assets, or any property dealt with under the Plan, any further or other Claim based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date. As provided in section 524 of the Bankruptcy Code, such discharge shall void any judgment against RWDY, RWDY's Estate, or any successor thereto at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against RWDY or property of RWDY or RWDY's Estate to the extent it relates to a discharged Claim. (D) Pursuant to section 1146(a) of the Bankruptcy Code, the transfer of any assets under this Confirmation Order, and the execution and delivery of any instrument of transfer by RWDY shall not be taxed under any law imposing a stamp tax or similar tax. Each and every federal, state, and local government agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transfer of any of RWDY's assets, all without imposition or payment of any stamp tax or similar tax.

6. **Authorization to Implement Plan**. Upon the entry of this Confirmation Order, RWDY is authorized to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and to execute, enter into, or otherwise make effective all documents arising in connection therewith (as they may be amended or modified as contemplated or permitted by the Plan) prior to, on, and after the Effective Date. All such actions taken or caused to be taken shall be, and hereby are, authorized and approved by the Bankruptcy Court such that no further approval, act, or action need to be taken under any applicable law, order, rule, or regulation. The approvals and authorizations specifically set forth in this Confirmation Order are not intended to limit the authority of RWDY to take any and all

actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.

7. **Plan Classification Controlling**. The classification of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications and amounts of Claims, if any, set forth in the Ballots tendered to or returned by Creditors in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan and (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual amount or classification of such Claims or Equity Interests under the Plan for distribution purposes.

8. **Retention of Causes of Action**. Except as otherwise provided in the Plan and this Confirmation Order, all Causes of Action shall be retained by the Reorganized Debtor or assigned to the RWDY Distribution Trust pursuant to Plan Section XII. These Causes of Action include, without limitation, all Claims and Causes of Action listed or referenced in the Plan, the Disclosure Statement, the Schedules, and/or in any Plan Document. Except as otherwise provided in the Plan, RWDY's and/or the RWDY Distribution Trust's rights to commence, pursue, prosecute, enforce, or settle such causes of action shall be, and hereby are, preserved notwithstanding the occurrence of the Effective Date. Reorganized RWDY will have standing to bring and prosecute the retained causes of action and the RWDY Distribution Trust will have standing to bring and prosecute the assigned causes of action  No person or entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against it as any indication that RWDY and/or the RWDY Distribution Trust will not pursue any and all available Causes of Action. RWDY and/or the RWDY Distribution Trust, as the case may be, expressly reserve, specifically and unequivocally, all rights to prosecute and

5

enforce any and all Causes of Action against any person or entity, except as otherwise specifically and expressly provided in the Plan. Unless any Causes of Action against a person or entity are specifically and expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, this Confirmation Order, or other order of the Court, RWDY and/or the RWDY Distribution Trust expressly reserve all Causes of Action for later adjudication.

9. **Termination**. As of the Effective Date, and except as provided in the Plan or this Confirmation Order, all entities shall be precluded from asserting against RWDY, The RWDY Distribution Trust its successors, or property, any other or further Claims, debts, rights, Causes of Action, liabilities, or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date. In accordance with the foregoing, except as provided in the Plan or this Confirmation Order, as of the Effective Date, entry of this Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against RWDY and termination of the Existing Equity Interests and other rights of the Holders of Existing Equity, pursuant to 11 U.S.C. §§ 524 and 1141, and such discharge shall void any judgment obtained against RWDY at any time, to the extent that such judgment relates to a Claim discharged.

10. **General Injunction**. (A) Except as otherwise expressly provided in the Plan, all entities who have held, hold, or may hold Claims and all entities who have held, hold, or may hold Equity Interests against RWDY are permanently enjoined on and after the Effective Date as set forth in the Plan. (B) Except as otherwise provided in the Plan, all entities who have held, hold, or may hold Claims against or Equity Interests in RWDY are, with respect to any such Claims or Equity Interests, permanently enjoined from and after the Confirmation Date from: (i) commencing, conducting, or continuing in any manner, directly, or indirectly, any suit, action, or

6

other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting RWDY, any of its property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, RWDY, or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree, or order against RWDY, any of its property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, RWDY, or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against RWDY, any of its property, or any direct or indirect transferee of any property of, or successor-in-interest to, any of the foregoing entities; (iv) asserting any right of setoff, subrogation, or recoupment of any kind, directly or indirectly, against any obligation due to RWDY, any of its property, or any direct or indirect transferee of any property of, or successor-in-interest to, RWDY; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan. (C) Furthermore, except as otherwise expressly provided in the Plan, for the consideration described in the Plan, as of the Effective Date, all entities who have held, hold, or may hold claims released pursuant to the Plan, whether known or unknown, and their respective agents, attorneys, and all others acting for or on their behalf, shall be permanently enjoined on and after the Effective Date, with respect to any claim released pursuant to the Plan, from (i) commencing or continuing in any manner, any action or other proceeding of any kind with respect to any claim against RWDY or its property, (ii) seeking the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against RWDY or its property, (iii) creating,

7

perfecting, or enforcing any encumbrance of any kind against RWDY, (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to RWDY, and (v) taking any act, in any manner and in any place whatsoever, that does not conform to or comply with provisions of the Plan. In the event that any entity takes any action that is prohibited by, or is otherwise inconsistent with the provisions of the Plan, then, upon notice to the Court, the action or proceeding in which the Claim of such entity is asserted shall automatically be transferred to the Court for enforcement of the provisions of the Plan. (D) Notwithstanding the foregoing, each Holder of a Contested Claim may continue to prosecute its Proof of Claim in the Court and all Holders of Claims shall be entitled to enforce their rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan.

11. **Term of Injunction or Stays**. Unless otherwise provided, all injunctions or stays set forth in 11 U.S.C. §§ 105 and 362 shall remain in full force and effect until the Effective Date rather than the Confirmation Date. Nothing in the Plan or this Confirmation Order, however, shall be construed as a limitation of the permanent injunctions provided for in the Plan and this Confirmation Order.

12. **Application for Allowance of Administrative Claims**. No later than the Administrative Expense Claim Bar Date, the Holder of an Administrative Expense Claim, other than (i) the Office of the United States Trustee, with respect to fees payable under 28 U.S.C. § 1930, and (ii) expenses incurred in the ordinary course of RWDY's business, but including the Holders of Fee Claims, must File with the Court and actually serve on RWDY, Reorganized RWDY, their respective counsel, and the Office of the United States Trustee, a request for payment of such Administrative Expense Claim. Any such request must (1) be set and noticed for hearing in accordance with the Bankruptcy Rules and the Local Rules of the Court, and (2)

set forth at a minimum (i) the name of the Holder of the Administrative Expense Claim, (ii) the amount of the Administrative Expense Claim, (iii) the basis of the Administrative Expense Claim, and (iv) the basis for its Allowance as a Administrative Expense Claim. This requirement shall not supersede any applicable Local Rules of the Court regarding the required content of motions or applications seeking approval of Administrative Expense Claims. Failure to File this request timely and properly shall result in the Administrative Expense Claim being forever barred, discharged, and waived.

13. **Payment of Administrative Claims**. RWDY is authorized and directed to pay all Administrative Expenses Claims, including Fee Claims, Allowed by order of the Court. RWDY and the RWDY Distribution Trust are authorized and directed to rely on orders of the Court in making distributions to all other creditors, including in paying such claims, notwithstanding an appeal or motion for reconsideration of such order, unless a court of competent jurisdiction has issued a stay pending appeal or reconsideration of such order.

14. **Objections to Claims**. Any party authorized by the Bankruptcy Code, may object to the allowance of Pre-Petition Claims at any time prior to the Claims Objection Bar Date. Any Proof of Claim Filed after the Claims bar Date shall be of no force and effect and shall be deemed Disallowed. All Contested Claims shall be litigated to Final Order; provided, however, that RWDY and/or the RWDY Distribution Trust may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court.

15. **Payment of Statutory Fees**. Any fees due the United States Trustee shall be paid on or before the Effective Date; however, any fees due to the United States Trustee after the Effective Date shall be paid as such become due.

16. **Disallowance of Special Taxes**. The issuance, transfer, or exchange of a security as defined under the Bankruptcy Code or applicable law, or the making or delivery of any instrument of transfer under the Plan, shall not be taxed under any state or local law imposing a stamp tax or similar tax as provided in 11 U.S.C. § 1146.

17. **Vesting of Assets; Cancellation of Existing Equity Interests and Issuance and New Equity**. Upon the Effective Date, and except as set forth in the Plan and this Confirmation Order, all property of RWDY shall remain with RWDY, and from and after the Confirmation Date, RWDY shall continue in existence, for the purpose of facilitating Reorganized RWDY's business operations going forward. Notwithstanding the foregoing, on the Effective Date, (a) the Existing Equity Interests shall be cancelled in their entirety and shall be of no further force or effect, and (b) new voting stock shall be issued by the Reorganized RWDY representing the New Equity.

18. **Notice of Entry of Confirmation Order**. On or before the seventh (7th) day following entry of this Confirmation Order, RWDY's counsel shall serve via first-class, prepaid United States mail notice of entry of this Confirmation Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all Creditors, Existing Equity Interest Holders, and other parties-in-interest.

19. **Reversal**. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to RWDY's receipt of written notice of any such order. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this

Confirmation Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan and any amendments or modifications thereto.

20. **Effectiveness of Confirmation Order**. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), and 6006(d), or any other provision of the Bankruptcy Code, the Bankruptcy Rules, or FED. R. CIV. P. 62(a), this Confirmation Order shall be effective and final immediately upon its entry and RWDY is authorized, but not required, to consummate the Plan immediately after entry of this Confirmation Order. The Court hereby expressly waives any requirement under Bankruptcy Rules 3020(e), 6004(h), and 6006(d), or any other provision of the Bankruptcy Code, the Bankruptcy Rules, or FED. R. CIV. P. 62(a), staying the effectiveness of Confirmation of the Plan for fourteen (14) days or for any other period of time.

21. **Retention of Jurisdiction**. Pursuant to 11 U.S.C. §§ 105(a) and 1142, the Court shall retain and shall have exclusive jurisdiction over any matter: (a) arising under the Bankruptcy Code; (b) arising in or related to the Chapter 11 Case or the Plan; or (c) that relates to the matters set forth in Article XI of the Plan, including but not limited to, adversary proceedings filed in the Chapter 11 Case as of the date hereof.

22. **Objections Overruled**. Except as otherwise expressly provided in this Confirmation order, objections, if any, to the Plan, to the extent not withdrawn, are denied and overruled.

23. **Notice of Effective Date**. Within fourteen (14) days after the Effective Date, Reorganized RWDY's counsel shall file a certificate with the Court stating that the Plan has become effective and has been substantially consummated.

24. **Continuance of Automatic Stay**. The stay in effect in Chapter 11 Case pursuant to 11 U.S.C. § 362(a) shall continue to be in effect until the Effective Date, and at that time shall be

11

dissolved and of no further force or effect, subject to the injunctions set forth in this Confirmation Order, the Plan, and/or sections 524 and 1141 of the Bankruptcy Code; provided, however, that nothing herein shall bar the filing of financing documents (including Uniform Commercial Code financing statements, security agreements, leases, mortgages, trust agreements, and bills of sale) or the taking of such other actions as are necessary to effectuate the transactions contemplated by the Plan prior to the Effective Date.

25. **No Modification of Section 502(a) or 502(j) Rights**. Nothing in the Plan or this Confirmation Order is intended to affect or modify the right of any party-in-interest under 11 U.S.C. § 502(a) to object to a claim or interest. Nothing in the Plan or this Confirmation Order is intended to affect or modify the rights of any party under 11 U.S.C. § 502(j).

26. **Calculation of Time Periods**. All time periods set forth in this Confirmation Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

27. **References to Particular Provisions**. The failure to reference or discuss any particular provision of the Plan in this Confirmation Order shall have no effect on the validity, binding effect, or enforceability of such provision, and such provision shall have the same validity, binding effect, and enforceability as every other provision of the Plan.

28. **Statutory Fees**; Reports. All fees payable on or before the Effective Date pursuant to 28 U.S.C. § 1930 to the U.S. Trustee shall be paid on or before the Effective Date. All such fees payable after the Effective Date shall be paid by Reorganized RWDY as such become due. Following the Effective Date, Reorganized RWDY shall file post-Confirmation quarterly operating reports with the U.S. Trustee up to the date a final decree is entered closing this Case.

29. **Management of Reorganized RWDY**. The Reorganized Debtor shall be owned by the New Equity Owners. The New Equity Owners will serve as directors of the Reorganized

12

Debtor unless and until any of such directors resign, are incapacitated, or are replaced. The New Equity Owners shall not receive compensation for their role as directors of the Reorganized Debtor. Brian Owen shall serve as President of the Reorganized Debtor and Kenneth Lowery shall serve as Secretary Treasurer of the Reorganized Debtor.

30. **Continued Existence of Reorganized RWDY**. Reorganized RWDY will exist on and after the Effective Date as a separate juridical entity, with all the powers of a Texas business corporation under applicable law, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law on or after the Effective Date. As of the Effective Date, Reorganized RWDY may operate its business free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or this Confirmation Order.

31. **Issued Subpoenas**. The subpoenas issued by the Committee to Brian Owen, Flowback Services, LLC; Pusher, LLC; Completion Tech, LLC; Spud Systems, LLC; Professional Drilling Services LLC of Texas; Zipper Completion, LLC; Multi-Well, LLC; Raceback Services, LLC; Wizards Trucking, LLC; Brian T. Owen; Chad M. Garland, CPA; Trent Millican, CPA, RBM, LLP, Tripping, LLC; Professional Drilling Services, LLC; Owen Silvio Holdings, LLC; Lawlerq Benton, LLC; American Express Company; and American Express Credit Company (the "Subpoenas") are not released by this order nor the conclusion of the confirmation process. The Distribution Trust is hereby substituted as the issuer of the Subpoenas in place of the Committee upon the creation the Distribution Trust without the necessity of any further action by the Debtor, the Committee, or the Distribution Trust. The Court retains jurisdiction over the Subpoenas and their return.

32. **Injunctive Relief**: Except as provided herein, on and after the Confirmation Date, all Creditors and persons acting in concert with them are enjoined and restrained pursuant to Section 105 of the Code from taking any action to collect or enforce any Claim directly or indirectly against the Reorganized Debtor and the RWDY Distribution Trust in any manner inconsistent with the terms contained in the Plan. The discharge granted by this Plan voids any judgment at any time obtained with respect to any debt discharged.

**THE EXCLUSIVE REMEDY FOR PAYMENT OF ANY CLAIM OR DEBT AGAINST THE DEBTOR WHICH IS ADDRESSED IN THIS PLAN SHALL BE PAYMENT OR DISTRIBUTION UNDER AND FROM THE PLAN, THE RWDY DISTRIBUTION TRUST AGREEMENT, AND/OR THE RWDY DISTRIBUTION TRUST. ALL PARTIES HOLDING CLAIMS, WHETHER ALLOWED OR DISALLOWED, ARE ENJOINED FROM TAKING ANY OTHER ACTION, INCLUDING, BUT NOT LIMITED TO, ANY ACTION TO PROSECUTE OR COLLECT ANY DEBT OR CLAIM AGAINST ANY GUARANTOR, INSIDERS, OFFICER, DIRECTOR, EMPLOYEE, INTEREST HOLDER OR AFFILIATE OF THE DEBTOR, INCLUDING, WITHOUT LIMITATION, OWEN AND THE OWEN AFFILIATED ENTITIES, UNLESS AND UNTIL THERE SHALL BE A COURT ORDER TERMINATING THIS INJUNCTION BECAUSE OF THE OCCURRENCE OF A DEFAULT OF THE REORGANIZED DEBTOR TO MAKE ONE OR MORE DISTRIBUTIONS UNDER THE PLAN REQUIRED TO BE MADE BY THE REORGANIZED DEBTOR TO THE RWDY DISTRIBUTION TRUST AS DESCRIBED IN PLAN SECTION 13.10. TO THE EXTENT NECESSARY, ANY APPLICABLE STATUTE OF LIMITATIONS AGAINST COLLECTION FROM THE RWDY DISTRIBUTION TRUST AND ANY THIRD PARTY IS SPECIFICALLY TOLLED FROM THE PERIOD OF TIME FROM THE PETITION DATE UNTIL THE DATE UPON WHICH THIS INJUNCTION IS TERMINATED. FURTHER, THE DISTRIBUTION TRUSTEE, THE RWDY DISTRIBUTION TRUST, AND THE REORGANIZED DEBTOR SHALL FORBEAR FROM MAKING DEMAND ON, EXECUTING, OR ATTEMPTING TO COLLECT IN ANY WAY UPON, THE OWEN GUARANTY OR THE PROPERTY AND SECURITY PROVIDED THEREFOR, OR THE OWEN NOTE, FOR SO LONG AS THE INJUNCTION SET FORTH IN PLAN SECTION 13.10 IS IN EFFECT.**

33.  **Objection to Tap Rock Claim**. Without limitation, nothing in the Plan or this Confirmation Order shall prejudice (a) the right of the Distribution Trustee, the Reorganized Debtor, or any other party in interest with standing, to object to Tap Rock Operating LLC's ("Tap Rock") proof of claim, including Tap Rock's right of setoff and/or any deficiency claim which Tap Rock may assert or otherwise; or (b) Tap Rock's right to assert a right of setoff as set forth in Tap Rock's proof of claim (claim #20) or its right to assert a deficiency claim in excess of its right of setoff.

34.  **Immaterial Modifications**. The Amended Plan of Reorganization with Immaterial Modifications, filed on January 20, 2021, is an immaterial modification of the Amended Plan of Reorganization within the purview of section 1127 of the Bankruptcy Code and applicable case law; therefore, the votes of Creditors and Holders of Existing Equity Interests for the Second Amended Plan of Reorganization constitute the votes of Creditors and Holders of Existing Equity Interests for the Amended Plan of Reorganization with Immaterial Modifications, filed on January 20, 2021.

A COPY OF THE DEBTOR'S AMENDED PLAN OF REORGANIZATION WITH IMMATERIAL MODIFICATIONS DATED JANUARY 20, 2021 (Doc. No. 271) IS ATTACHED AS AN EXHIBIT TO THIS ORDER.

###

This order prepared and submitted by:

Robert W. Raley, Esq. – LA Bar No. 11082
290 Benton Spur Road
Bossier City, LA 71112
Email: bankruptcy@robertraleylaw.com
Attorney for Debtor

**In the United States Bankruptcy Court**
**Western District of Louisiana**
**Shreveport Division**

| | | |
|---|---|---|
| **In the Matter Of**: | } | |
| | } | Case No. 20-10616 |
| RWDY, Inc. | } | |
| | } | Chapter 11 |
| **Debtor** | } | |

**DEBTOR'S AMENDED PLAN OF REORGANIZATION**
**WITH IMMATERIAL MODIFICATIONS DATED JANUARY 20, 2021**

RWDY, Inc. (the "Debtor") proposes the following Plan of Reorganization (the "Plan").

## ARTICLE I
## SUMMARY OF THE PLAN

**1.1 Overview of the Plan**: The Plan provides for a reorganization of all liabilities owed by and Claims against the Debtor. The Reorganized Debtor shall be the surviving Entity to the Debtor.

**1.2 Payments to Creditors**: The Plan provides for Creditors to be paid as provided in Article IV and Article V herein through the RWDY Distribution Trust from revenues derived from the operations of the Reorganized Debtor's business. All Creditors of the Debtor will be paid as provided herein in accordance with the priority scheme established by the Bankruptcy Code.

## ARTICLE II
## DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

**2.1 Scope of Definitions**: As used in this Plan, the following terms shall have their respective meanings as set forth below and, unless the context otherwise requires, shall be equally applicable to the singular and plural forms of the terms defined. Unless otherwise defined herein, the terms used in this Plan shall have the same meaning ascribed thereto in the Bankruptcy Code and the Bankruptcy Rules.

**2.2 Definitions**:

Additional Compensation: "Additional Compensation" means the compensation available to New Equity Owners pursuant to Section 6.12, *infra*.

Administrative Claim: "Administrative Claim" means any Claim or request for payment of any cost or expense of administration of the Chapter 11 Case entitled to priority in accordance with Sections 503(b) and 507(a) of the Bankruptcy Code, including, without limitation, (a) any

actual and necessary expenses of preserving the Debtor's Estate and operating its business from and after the Petition Date to and including the Confirmation Date, (b) all allowances of compensation and reimbursement approved by the Court in accordance with the Bankruptcy Code, and (c) any fees or charges assessed against the Debtor's Estate under Chapter 11 of the Bankruptcy Code.

<u>Administrative Claim Bar Date</u>: "Administrative Claim Bar Date" means The date that is thirty (30) days after the Confirmation Date.

<u>Allowed</u>: When used with respect to any Claim except for a Claim that is an Administrative Expense, "Allowed" means (a) such Claim to the extent it is not a Contested Claim or Disputed Claim; (b) such Claim to the extent it may be set forth pursuant to any stipulation or agreement that has been approved by Final Order; or (c) a Contested Claim or Disputed Claim, proof of which was filed timely with the Bankruptcy Court and (1) as to which no objection was filed by the Claims Objection Deadline; (2) that the MCA Claimholder has opted to have established in amount and treated pursuant to the Class 4 MCA Claims Table on or before the Confirmation hearing; or (3) as to which an objection was filed by the Claims Objection Deadline, to the extent Allowed by Final Order.

<u>Allowed Priority Claim</u>: "Allowed Priority Claim" means all or that portion of any Priority Claim which is or has become an Allowed Claim.

<u>Allowed Secured Claim</u>: "Allowed Secured Claim" means all or that portion of any Secured Claim which is or has become an Allowed Claim.

<u>Assigned Causes of Action</u>: "Assigned Causes of Action" means and includes all Avoidance Actions and all Causes of Action existing in favor of the Debtor on or before the Confirmation Date, excluding any rights, claims, actions or Causes of Action released or waived by any order of the Bankruptcy Court, provided, however, that "Assigned Causes of Action" shall neither mean nor include any Avoidance Action or Causes of Action against any Merchant Cash Advance Lender or MCA Lender that does not opt to have its Claim treated in accordance with the Class 4 MCA Claims Table by voting to accept the Plan. Assigned Causes of Action are further identified, without limitation, in Section 12.2.1, *infra*.

<u>Avoidance Action</u>: "Avoidance Action" means any and all rights, claims or actions which the Debtor may assert on behalf of the Estate under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of Sections 542, 544, 545, 546, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code, except to the extent that any such rights, claims, or actions are expressly released or waived in this Plan.

<u>Bankruptcy Code</u>: "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time.

<u>Bankruptcy Court</u>: "Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Louisiana.

<u>Bankruptcy Rules</u>: "Bankruptcy Rules" means the rules of procedure applicable to cases or proceedings pending before the Court, now existing or as hereafter amended.

<u>Bar Date</u>: "Bar Date" means the date of September 21, 2020, fixed by the Bankruptcy Court's Order entered on June 29, 2020 [Doc. No. 33] as the last date upon which proofs of claim or interest may be filed in this Chapter 11 case, provided that the last date upon which proofs of claim may be filed by a governmental unit was fixed as 180 days after the petition date.

<u>Beneficiaries</u>: "Beneficiaries" in the context of the RWDY Distribution Trust shall mean those persons holding beneficial interests in the RWDY Distribution Trust, including but not limited to Allowed Claims in any of Classes 4, 5, and 8, herein.

<u>Business Day</u>: "Business Day" means any day on which banks are open to carry on their ordinary commercial banking business in Shreveport, Louisiana.

<u>Cash</u>: "Cash" means cash, cash equivalents and other readily marketable securities or instruments, including, without limitation, direct obligations of the United States of America, certificates of deposits issued by banks and commercial paper of any Entity, including interest earned or accrued thereon, but specifically excluding any collateral consisting of funds in deposit or escrow accounts securing a Secured Claim.

<u>Cause of Action</u>: "Cause of Action" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, promises, warranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Cause of Action also includes: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 551, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

<u>Chapter 11 Case</u>: "Chapter 11 Case" means the Chapter 11 bankruptcy case of RWDY, Inc., No. 20-10616, United States Bankruptcy Court for the Western District of Louisiana, Shreveport Division, filed June 22, 2020.

<u>Claim</u>: "Claim" has the meaning given to that term in 11 U.S.C. § 101(5).

3

<u>Claim Objection</u>: "Claim Objection" means any objection to a Claim and any right to object to a Claim being Allowed.

<u>Claims Objection Deadline</u>:  Except as otherwise provided in any order of the Court establishing an earlier date, "Claims Objection Deadline" means the date that is ninety (90) days after the Effective Date and by which parties authorized by the Plan to do so may file objections to Claims other than Administrative Claims. (The deadline for objections to Administrative Claims specified elsewhere in the Plan.)

<u>Collateral</u>:  "Collateral" means property in which the Debtor has an interest that secures, in whole or in part, payment of an Allowed Secured Claim.

<u>Confirmed Plan</u>:  "Confirmed Plan" means the Plan confirmed by an Order of the Bankruptcy Court.

<u>Confirmation</u>:  "Confirmation" means the entry of an Order of the Bankruptcy Court confirming this Plan.

<u>Confirmation Date</u>:  "Confirmation Date" means the date of entry of the Confirmation Order in accordance with the provisions of the Bankruptcy Code, provided, however, that if the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the earlier of the date of entry of an Order vacating such stay or the date on which such stay expires or is no longer in effect.

<u>Confirmation Hearing</u>:  "Confirmation Hearing" means the date set by the Court to consider confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code.

<u>Confirmation Order</u>: "Confirmation Order" means an Order of the Court confirming the Plan.

<u>Contested</u>: When used with respect to a Claim, "Contested" means a Claim against the Debtor (a) that is listed in the Debtor's Schedules as disputed, contingent or unliquidated regardless of whether a proof of claim has been filed or not; (2) that is listed in the Debtor's Schedules as undisputed, liquidated and not contingent and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent the proof of claim amount exceeds the scheduled amount; (3) that is not listed in the Debtor's Schedules, but as to which a proof of claim has been filed with the Bankruptcy Court; or (iv) as to which an objection has been filed. Notwithstanding the foregoing, after the Claims Objection Deadline, including any extensions thereto, only Claims to which an Objection has been filed shall be deemed Contested Claims with respect to Claims for which a proof of claim has been filed.

<u>Contingent Claim</u>: "Contingent Claim" means any Claim listed as "contingent" in the Debtor's schedules.

4

Court: "Court" means (a) the Bankruptcy Court, (b) such other court as may exercise jurisdiction over the Chapter 11 Case or any appeal from any Order or judgment in the Chapter 11 Case or any adversary proceeding related to the Bankruptcy case, and/or (c) any court which exercises jurisdiction under 28 U.S. Code § 1334 and/or 28 U.S. Code § 157 in relation to Chapter 11 Case or any adversary proceeding or other proceeding commenced in the Bankruptcy Court or the United States District Court for the Western District of Louisiana.

Creditor: "Creditor" means any Entity that is the Holder of a Claim or an interest, including, but not limited to: (a) a Claim that arose on or before the Petition Date, (b) an interest that arose on or before the Petition Date, (c) a Claim against the Debtor's Estate of any kind specified in Section 502(g), Section 502(h), or Section 502(i) of the Bankruptcy Code or (d) an Administrative Claim.

Cure Claim: A "Cure Claim" refers to the payment or other performance required to cure any existing default under an executory contract in accordance with Section 365 of the Bankruptcy Code and, unless otherwise specifically provided for in the Plan, is presented via an "Assumption Cure Proof of Claim" as described in Section 7.2 of the Plan.

Debtor: "Debtor" means RWDY, Inc.

Debtor Distributions: "Debtor Distributions" means distributions made directly by the Debtor or Reorganized Debtor.

Default: Notwithstanding anything contained herein to the contrary, a "Default" is defined as a failure by the Reorganized Debtor or the RWDY Distribution Trust to comply with any material provision of the Confirmed Plan, the Confirmation Order or The RWDY Trust Agreement which failure is not remedied within 30 days of written notice of the failure to the Reorganized Debtor, c/o Brian T. Owen 2640 Youree Drive, Suite 200, Shreveport, LA 71104.

Disallowed: With respect to any Claim, "Disallowed" means a Claim or any portion thereof that (a) has been disallowed by a Final Order, (b) is scheduled as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or the Plan, (c) is not scheduled and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or the Plan, (d) has been waived or withdrawn by agreement of the applicable Debtor or Reorganized Debtor, as applicable, and the Holder thereof, or (e) has been waived or withdrawn by the Holder thereof.

Disclosure Statement: "Disclosure Statement" means the written Disclosure Statement filed and served with respect to this Plan, as approved by the Court pursuant to Section 1125 of the Bankruptcy Code.

Disputed Claim: "Disputed Claim" means any Claim or interest to which an objection has been interposed in accordance with the Bankruptcy Code, Bankruptcy Rules, this Plan or Orders of the Court.

Distribution Date and Distributions: The "Distribution Date" shall mean and be the 15th day of the first full month following the Effective Date and the 15th day of each succeeding month. Beginning on the first Distribution Date, The Distribution Trustee will begin making required monthly distributions pursuant to the terms of the Plan, the Confirmation Order, and the RWDY Distribution Trust Agreement. The monthly Distributions will continue until all required distributions have been made.

Distribution Trustee: "Distribution Trustee" means Lucy G. Sikes.

Distributions under the Plan: "Distributions under the Plan" shall mean and include distributions made directly by the Reorganized Debtor and distributions made by the RWDY Distribution Trust.

Effective Date: "Effective Date" means a Business Day selected by the Debtor following the first Business Day after the day on which (i) the conditions precedent to the effective date of the Plan, as set forth in Section 13.5 herein, have been met; and (ii) the Confirmation Order becomes a Final Order.

Entity: The term "Entity" means and includes person, estate, trust, governmental unit, and United States trustee, as applicable according to the context in which it is used.

Estate: "Estate" means the estate created in the Chapter 11 Case pursuant to Section 541 of the Bankruptcy Code.

Equity Interest: "Equity Interest" means an interest in the ownership of the Debtor.

Fee Application: "Fee Application" means an application of a Professional Person under Sections 328, 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Case.

File, Filed, or Filing: "File," "filed," or "filing" means file, filed or filing with the clerk of the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

6

Final Financing Order: "Final Financing Order" means that Final Order Authorizing Debtor to: (I) Maintain and Continue to Operate under Purchase Agreement in Order to Sell Accounts Post-Petition to Seacoast and to Incur Credit from Seacoast Pursuant to 11 U.S.C. Section 363(b), (c), (f) and (m); (II) Grant Seacoast Adequate Protection in the Form of First priority Liens and Security Interests on Property of the Debtor's Estate Pursuant to 11 U.S.C. Sections 364(c), 364(d)(1), 364(e) and 507; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief, Nunc Pro Tunc dated July 17, 2020 [Doc. No. 95].

Final Order: "Final Order" means an order or a judgment which has not been reversed, stayed, modified or amended and as to which (i) the time to appeal or seek review, reargument or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending or (ii) its appeal, review, reargument, rehearing or certiorari has been denied and a time to seek a further appeal, review, reargument, rehearing or certiorari has expired as a result of which such order or judgment shall have become final and nonappealable in accordance with applicable law.

Holder or Claimholder: "Holder" or "Claimholder" means any Entity that is the holder of a Claim, including but not limited to (a) a Claim that arose on or before the Petition Date, (b) a Claim against the Debtor's Estate of any kind specified in Section 502(g), Section 502(h) or Section 502(i) of the Bankruptcy Code, or (c) an Administrative Claim.

Impaired: When used with respect to any Claim, interest or class, "impaired" has the same meaning as that contained in Section 1124 of the Bankruptcy Code.

Income Generated Taxes: "Income Generated Taxes" means and includes all federal and state income taxes, FICA taxes, Medicare taxes, social security taxes, self-employment taxes, alternative minimum taxes, and other taxes owed on account of, and all other taxes on or measured by income, compensation, or benefits received by an employee.

Initial Distribution Trust Funds: "Initial Distribution Trust Funds" means the sum of $75,000.00 to be paid by the Debtor, in cash, to the RWDY Distribution Trust on the Effective Date.

Interest Holder: "Interest Holder" means any person or Entity holding an Equity Interest in the Debtor as of the Petition Date.

Litigation: "Litigation" means and includes, without limitation, the filing, commencement, continuation, and/or prosecution of motions, actions, lawsuits, or proceedings, or the pursuit of any Cause of Action, regardless of whether filed, initiated, commenced, or completed before or after the Effective Date. Without limiting the foregoing, "Litigation" also means and includes any matters or proceedings related to the administration of the RWDY Chapter 11 Bankruptcy Case or the RWDY Distribution Trust.

Merchant Cash Advance Agreement or MCA Agreement: "Merchant Cash Advance Agreement" or "MCA Agreement" mean any agreement on which any of the Merchant Cash Advance Lenders or MCA Lenders has made or makes any Claim against the Debtor and any agreement between the Debtor and any MCA Lender.

Merchant Cash Advance Lender or MCA Lender: "Merchant Cash Advance Lender" or "MCA Lender" means and refers to each of the Entities which have filed proofs of claim herein as "EIN Cap, Inc., Fox Capital Group, Inc., Queen Funding, LLC, Tailored Fund Cap LLC, Tiger Capital Group LLC, and Vernon Capital Group, LLC. and Mr. Advance, LLC.

Monthly Distribution Amount: "Monthly Distribution Amount" shall mean the aggregate amount of money to be transferred by the Reorganized Debtor to the RWDY Distribution Trust on a monthly basis pursuant to Section 6.1, *infra*, which amount shall be equal to: (i) the amount required to pay Class 4 Claims, currently $182,228.16, but subject to adjustment through the claims allowance process, plus (ii) the sum of $10,000.00, if and only if the Class 5 Claim Holder elects Option B under Section 5.5.2, infra, plus (iii) the amount necessary to pay Class 8 Claims, currently $10,000 per month but subject to adjustment through the claims allowance process, plus (iv) an amount equal to 2.5% of the sum of amounts under clauses (i) + (ii) + (iii), *supra*, which shall be sufficient to enable the Distribution Trustee to make each of the monthly distributions required under the terms of the Plan, the Confirmation Order and the RWDY Distribution Trust Agreement as they come due.

Management Incentive Plan: "Management Incentive Plan" means a Management Incentive Plan that may be adopted by the board of directors of the Reorganized Debtor to become effective after the Effective Date.

New or Amended Organizational Documents: "New or Amended Organizational Documents" means such new or amended certificates or articles of incorporation, by-laws, stockholders' agreements, or other applicable formation and governance documents of the Reorganized Debtor, as applicable, the form of which shall be included in the Plan Supplement.

New Equity Owners: "New Equity Owners" means and includes (a) Brian T. Owen, (b) if, and only if, he elects the treatment provided for the Class 5 Claim which is offered as Option A under section 5.5.2, Jason Brazzel, and (c) if, and only if, he elects the treatment provided for the Class 6 Claim which is offered as Option A under section 5.6.2, Kenneth Lowery.

Net Cash Flow: "Net Cash Flow" means the Debtor's net revenues after operating expenses and secured debt service.

Order: "Order" means (a) an order or judgment of the Bankruptcy Court as entered on the docket for this bankruptcy case (b) an order or judgment of another Court which may exercise jurisdiction over the Chapter 11 Case, any proceedings in the Chapter 11 Case, any adversary proceeding related to the Bankruptcy case, or any appeal taken or pending from any order or

judgment with respect to the foregoing, and/or (c) any Court which exercises jurisdiction under 28 U.S. Code § 1334 and/or 28 U.S. Code § 157 in relation to the Bankruptcy Case.

Other Trust Assets: "Other Trust Assets" shall mean any property of the RWDY Distribution Trust, including but not limited to the Assigned Causes of Action, but shall exclude (a) the Initial Distribution Trust Funds, and (b) the Monthly Distribution Amount paid by the Reorganized Debtor to the RWDY Distribution Trust, and (c) any funds transferred to the RWDY Distribution Trust pursuant to Section 6.12.2, *infra*, after the payment of the 2.5% of such transferred funds as a commission authorized under Section 9.10, *infra*.

Owen: "Owen" means Brian T. Owen, the present Interest Holder.

Owen Debt: "Owen Debt" means the aggregate amount of $20,397,221.00 for which Brian T. Owen is indebted to the Debtor for loans as described in Section 6.13, infra.

Owen Guaranty: "Owen Guaranty" means the guaranty to be executed by Owen as described in Section 6.13, *infra*, guaranteeing the payment of the obligations of the Reorganized Debtor to the RWDY Distribution Trust, including without limitation the Allowed Claims in Classes 4, 5 and 8.

Owen Affiliated Entities: "Owen Affiliated Entities" means those Entities in which Owen has any type of ownership rights, including partnership rights, including without limitation, (a) the Debtor, (b) Rackback Services LLC, Completion Tech, LLC, Multi-Well LLC, Spud Systems, LLC, Zipper Completion LLC, Triping LLC a/k/a Tripping, LLC, Pusher, LLC, Wizards Trucking, LLC, Flowback Services, LLC, Professional Drilling Services LLC, Owen Silvio Holdings, LLC, Fracks and Racks Hunting Club, LLC, 2640 Youree Drive Office Complex, LLC, Brian T. Owen, Inc., CRSH, LLC, Jet Oilfield Services, LLC, O&T Eateries, LLC, Professional Drilling Services LLC of Texas, Shreveport Eats, LLC, McJunkins Restaurant Fund, WM Eats Development, LLC, West Monroe Eats, LLC, Lawyer BBQ, LLC, 6458 Highway 3, LLC, and Rental Services, LLC.

Petition Date: "Petition Date" means June 22, 2020.

Plan: "Plan" means the Plan proposed by the Debtor, either in its present form or as it may be amended or modified.

Plan Supplement: "Plan Supplement" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed by the Debtor in accordance with the Order approving the Disclosure Statement or by such later date as may be approved by the Bankruptcy Court, and additional documents Filed with the Bankruptcy Court before the Effective Date as amendments to the Plan Supplement. The Plan Supplement shall be comprised of, among other documents, the following: (a) the Amended Organizational Documents; (b) the Assumed Executory Contract and Unexpired Lease List; (c) the Rejected Executory Contract and Unexpired Lease List; (d) any Supplemental Schedule of Retained Causes of Action and Claims; (e) Claims

Objection Schedule; (f) the identity of the members of the Reorganized RWDY, Inc., board of directors and management for the Reorganized Debtor; g) the Owen Guaranty, and (h) ancillary documents, including without limitation, Forbearance Agreement, mortgages, security agreements, and indicia of perfection, and (i) any Management Incentive Plan. Any reference to the Plan Supplement in the Plan shall include each of the documents identified above as (a) through (i). Notwithstanding the foregoing, the Debtor may amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date or as otherwise provided herein.

Priority Claim: "Priority Claim" means an Allowed Claim entitled to a priority under, inter alia, Section 507(a) of the Bankruptcy Code.

Priority Tax Claim: "Priority Tax Claim" means a Claim that is entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

Pro Rata: "Pro Rata" means proportionately so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim to the amount of the Allowed Claim is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims of the class in which the particular Allowed Claim is included to the amount of all Allowed Claims of that Class.

Professional Claim: "Professional Claim" means a Claim that is filed by a Professional Person pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

Professional Claim Bar Date: "Professional Claim Bar Date" means the date that is sixty (60) days after the Effective Date.

Professional Person: "Professional Person" means any Entity retained or to be compensated pursuant to Sections 326, 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

Reorganized Debtor: "Reorganized Debtor" means the legal Entity that shall survive the Debtor as of the Confirmation Date.

RWDY Distribution Trust: "RWDY Distribution Trust" means that trust entity to be created post-confirmation under the terms of section 6.6 and Article IX hereof.

RWDY Distribution Trust Agreement: "RWDY Distribution Trust Agreement" means the agreement in substantially the form of Exhibit A to the Plan and Exhibit F attached to the Disclosure Statement (same document).

Secured Claim: "Secured Claim" means a Claim of a Creditor arising on or before the Petition Date to the extent (a) secured by a lien on Collateral which is not void or avoidable under applicable state and federal law, including the Bankruptcy Code or (b) subject to set off under

Sections 553 of the Bankruptcy Code, limited in each of case (a) or (b) to the extent of the value of said Creditor's interest in the Debtor's interests in the property or the amount of the set off, as applicable; provided, however, that nothing herein shall prohibit a Secured Creditor from making the election provided in Sections 1111(b)(2) of the Bankruptcy Code.

Secured Creditor: "Secured Creditor" means any Creditor that is the Holder of a Secured Claim.

Settled Actions: "Settled Actions" means, collectively, (a) Claims Objections or any other action related to a Claim, (b) any and all claims and Causes of Action that the Debtor, the Committee, or the Distribution Trustee could assert against any non-debtor party, which claims and Causes of Action shall be fully and finally released pursuant to the Plan subject to the Bankruptcy Code and Bankruptcy Rules.

Taxing Authorities: "Taxing Authorities" means the Internal Revenue Service, the Louisiana Department of Revenue, and any other state or local taxing authority.

Trust Assets: "Trust Assets" shall mean all of the following: (i) the Initial Distribution Trust Funds, (ii) the Monthly Distribution Amount paid by the Reorganized Debtor to the RWDY Distribution Trust, (iii) all funds transferred to the RWDY Distribution Trust pursuant to Section 6.12.2, *infra,* after the payment of the 2.5% of such transferred funds as a commission as authorized under Section 9.10 of this Plan, and (iv) the Other Trust Assets.

Undetermined Claim: "Undetermined Claim " means a Claim that is (a) a Disputed Claim or Contested Claim; (b) a Claim arising through rejection of an executory contract or unexpired lease; (c) an undetermined Administrative Claim in respect of an application of a Professional Person; or (d) a Claim that is an Unliquidated Claim or a Contingent Claim.

Unliquidated Claim: "Unliquidated Claim" means any Claim that is listed in the Debtor's schedules as "unliquidated."

Unsecured Claim: "Unsecured Claim" means any Claim against the Debtor whatsoever, other than (a) a Secured Claim, or (b) a Claim that is entitled to priority pursuant to the Bankruptcy Code.

Withheld Distribution Amount: "Withheld Distribution Amount" shall mean any distribution that would be made on a Claim from the RWDY Distribution Trust but for the fact that the Claim has not been Allowed.

**2.3  Rules of Interpretation**:  For purposes of this Plan, (i) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference in the Plan to an

11

existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified, or supplemented as permitted herein; (iii) the words "herein," "hereto" and "hereof" refer to the Plan in its entirety rather than to a particular portion of the Plan; and (iv) the rules of construction set forth in Section 502 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

**2.4 <u>Computation of Time</u>**:  In computing any period of time prescribed or allowed in this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**2.5 <u>Exhibits and Plan Supplement</u>**:   All exhibits are incorporated into and are a part of the Plan as if set forth in full herein.  Holders of Claims and Interests may obtain a copy of the Filed exhibits upon written request to the Debtor's Attorney, Robert W. Raley, Esq., 290 Benton Spur Road, Bossier City, LA 7111 or bankruptcy@robertraleylaw.com.  Upon their Filing, the exhibits may be inspected in the office of the clerk of the Bankruptcy Court or at the Bankruptcy Court's CM/ECF or PACER website. Moreover, all pleadings, documents, exhibits or plan supplements referred to in this Plan may be viewed and printed by logging on to PACER at www.lawb.uscourts.gov.  To  obtain  a  password,  you  may  register  at http://pacer.psc.uscourts.gov or call PACER Service Center at 1-800-676-6856. The documents contained in the exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order. The Debtor expressly reserves the right to modify or make additions to or subtractions from any exhibit or to the Plan and to amend, modify or supplement any exhibit to the Plan in conformance with the provisions of this Plan, the Bankruptcy Code and Bankruptcy Rules.

### ARTICLE III
### DESIGNATION OF CLASSES OF CLAIMS

**3.1 <u>Designation of Classes of Claims</u>**: A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been released or otherwise satisfied before the Effective Date.

**3.2 <u>Unclassified Claims</u>**:

(i)  Allowed Administrative Claims (Unimpaired)

(ii)  Allowed Priority Tax Claims (Unimpaired)

(iii)  Insured Claims

**3.3 Classified Claims and Interests**:

| | |
|---|---|
| Class 1: | Secured Claim of the United States Small Business Administration (Impaired) |
| Class 2: | Secured Claim of Seacoast Business Funding (Impaired) |
| Class 3: | Secured Claim of Bossier Federal Credit Union (Impaired) |
| Class 4: | The Merchant Cash Advance Lenders Claims (Impaired) |
| Class 5: | The Jason Brazzel Drill Pro Consulting LLC Claim (Impaired) |
| Class 6: | The Kenneth Lowery Drill Pro Consulting LLC Claim (Impaired) |
| Class 7: | JPMorgan Chase PPP CARES ACT Claim (Impaired) |
| Class 8: | General Unsecured Claims (Impaired) |
| Class 9: | Equity Interest Holders (Impaired) |

**ARTICLE IV**
**PAYMENT OF ADMINISTRATIVE CLAIMS AND EXPENSES**
**AND CERTAIN PRIORITY CLAIMS AND TREATMENT OF INSURED CLAIMS**

**4.1 Administrative Claim Applications and Deadline**. Holders of Administrative Claims, including Professional Claims, other than: (a) Allowed Administrative Claims as of the Effective Date; (b) Administrative Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtor's business which may be paid in the ordinary course of the Debtor's business without order of the Bankruptcy Court; and (c) Administrative Claims that constitute fees or charges assessed against the Estate under Chapter 123, Title 28, United States Code, by no later than the Administrative Claim Bar Bate must: (i) file an application with the Bankruptcy Court for allowance and request for payment of the Administrative Claim; and (ii) serve a copy of such application and request on the Debtor, the United States Trustee and all other parties entitled to notice thereof. Failure to file and serve such application and request by the Administrative Claim Bar Date or Professional Claim Bar Date, whichever date is applicable, shall result in the Administrative Claim being forever barred and discharged. Except as specifically provided in the Plan, nothing in this Plan alters the law applicable to, and governing, the allowance and payment of Administrative Claims (including Professional Claims) under the Bankruptcy Code.

13

**4.2   Treatment of Administrative Claims**:  Except to the extent that the Debtor and the Holder of an Administrative Claim may otherwise agree in writing, Administrative Claims which are Allowed Claims prior to the Effective Date of the Plan shall be paid in full on or before the Effective Date of the Plan. Administrative Claims that become Allowed Claims after the Effective Date of the Plan shall be paid in full in cash on or before ten (10) business days following the date the Administrative Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court.

**4.3   Treatment of Professional Claims**:  Professional Claims become Allowed the same as Administrative Claims in this Article (Section 4.1), and are treated the same as Administrative Claims in this Article (Section 4.2), except that: (i) a Professional Claim that has been previously Allowed on a final (not interim) basis by Final Order of the Bankruptcy Court is not subject to the requirement of filing an application as provided in Section 4.1; (ii) a Professional Claim that has been Allowed on an interim basis (not final) in whole or in part, shall with respect to being Allowed on a final basis, be subject to the filing of an application for its allowance as provided for in Section 4.1, but shall file such application by the Professional Claims Bar Date (as opposed to the Administrative Claim Bar Date) and shall be subject to such law, rules and procedures as would be otherwise applicable to the same outside of the this Plan; (iii) a Professional Claim that has been previously Allowed and paid on a final basis by Final Order of the Bankruptcy Court, but subject to disgorgement in the event of administrative insolvency, shall cease being subject to said disgorgement ten (10) days after the Professional Claims Bar Date unless, upon motion and notice, the Bankruptcy Court extends such period; (iv) any interim payments on account of a Professional Claim shall be credited against the payment of the final Allowed amount of such Professional Claim; and (v) any retainer provided on account of a Professional Claim may be credited and applied against the payment of the final Allowed amount of such Professional Claim once such Professional Claim is Allowed.

**4.4   Post-Confirmation Fees and Expenses**:   Upon the Confirmation Date, any requirement that Professionals comply with Bankruptcy Code sections 327 through 331 and 1103 in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any professional for services rendered or expenses incurred after the Confirmation Date in the ordinary course of business without any further notice to any party or action (including, without limitation, the need to file a fee application), order or approval of the Bankruptcy Court.

**4.5   Priority Tax Claims**:  Priority Tax Claims shall be paid by the Reorganized Debtor, up to the Allowed amount of such Claim, plus interest at the rate of 3% per annum accrued thereon on a quarterly basis on April 1, July 1, October 1, and January 1 of each year over a period not exceeding five (5) years after the date of the order for relief, as provided in Section 1129(a)(9)(C) of the Bankruptcy Code, commencing after the first full quarter following the Effective Date.  If the Reorganized Debtor fails to make a payment owed on an Allowed Priority Tax Claim pursuant to the terms of the Plan, it shall be deemed an Event of Default.  In the event that an Event of Default occurs with regard to an Allowed Priority Tax Claim, the specific Holder of the Priority Tax Claim shall send a written notification, via first class mail, postage pre-paid, to the Reorganized

Debtor of the Event of Default with a copy to Seacoast at 1880 N. Congress Ave., Suite 404, Boynton Beach, FL 33426 Attn: Mr. Jay Atkins. The Reorganized Debtor shall have thirty (30) days from the date the written notification is sent to cure the Event of Default in full or the Holder of the Allowed Priority Tax Claim may: (a) enforce the entire amount of its Claim; (b) exercise any and all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in the Bankruptcy Court. The Reorganized Debtor's mailing address for purposes of sending this written notification is RWDY, Inc., 2640 Youree Drive, Suite 200, Shreveport, LA 71104. Notices sent to the Reorganized Debtor by the Holder of an Allowed Priority Tax Claim shall be sent by first class mail, postage pre-paid.

**4.6 Insured Claims**:  Insured Claims shall be satisfied from the proceeds of any applicable Insurance Policy. Insured Claims include the Claims held by Jacob Ashley and Rhonda Sue Devor. Insured Claims are not classified and are not entitled to any distributions under the Plan; however, the relevant holder shall exhaust all remedies with respect to the applicable Insurance Policy.  Any Insured Claim shall be deemed to be satisfied in full from the proceeds of the applicable Insurance Policy. Nothing in this Section 4.6 shall constitute a waiver of any claim, right or cause of action the Debtor or the Estate may hold against any Person, including any insurer.  Pursuant to section 524(e) of the Bankruptcy Code, nothing in the Plan shall release or discharge any insurer from any obligations to any Person under applicable law or any policy of insurance under which any Debtor is an insured or beneficiary or for purposes of any insurance recovery.

**4.7 Inapplicability to Seacoast**: Prior to the Effective Date of the Plan, approval by the Court  and payment of any fees and costs, including attorneys' fees incurred by Seacoast under the Post-Petition Agreements (as defined in section 5.2, below), and to the extent such fees and expenses may qualify as Professional Claims, this section is inapplicable, and instead the payment of any such fees and expenses incurred by Seacoast for which Seacoast is entitled to reimbursement by the Debtor under the Post-Petition Agreements (as defined in section 5.2., below), shall be governed exclusively by the procedures established under the Final Financing Order and the Post-Petition Agreements (as defined below).

**ARTICLE V**
**TREATMENT OF CLASSES OF CLAIMS AND INTERESTS**

**5.1 Secured Claim of the United States Small Business Administration (Class 1)**:

**5.1.1**  Class 1 shall consist of the Allowed Secured Claim of The United States Small Business Administration.

**5.1.2** The United States Small Business Administration, holds a Secured Claim in the allowed amount of $150,000.00. It will be paid in 320 monthly installment payments of $742.23 that includes interest at the rate of 3.25% per annum. The accrual of interest and the payments will commence on the on the 15th Day of the first month following the Plan's Effective Date.

15

**5.1.3** Retention of Liens: The United States Small Business Administration shall hereby retain the lien it currently holds, and its lien shall remain in full force and effect until all payments required under the Plan have been paid in full.

**5.1.4** Impairment: The Class 1 Secured Claim of United States Small Business Administration is Impaired under the Plan.

**5.2** **Secured Claim of Seacoast Business Funding (Class 2):**

**5.2.1** Class 2 shall consist of the Allowed Secured Claim of Seacoast Business Funding, a Division of Seacoast National Bank ("Seacoast"). The Debtor and Seacoast operated prepetition pursuant to a Purchase Agreement entered into on or about November 21, 2018 as amended, supplemented and/or restated by that First Amendment to Purchase Agreement dated March 26, 2019, that Second Amendment to Purchase Agreement dated May 9, 2019, and that Third Amendment to Purchase Agreement dated October 26, 2019, (hereinafter collectively, the "Purchase Agreement"), and in addition, post-petition, have operated and continue to operate pursuant to the Purchase Agreement, as amended and/or supplemented by that Post-Petition Chapter 11 Bankruptcy Rider to Purchase Agreement (the "Bankruptcy Rider") (the Purchase Agreement and the Bankruptcy Rider shall hereinafter be referred to collectively as, the "Post-Petition Agreements"), as approved by the Bankruptcy Court pursuant to the entry of the Final Financing Order.

**5.2.2** Pursuant to the Post-Petition Agreements, all prepetition and post-petition Obligations (as defined in the Final Financing Order) due to Seacoast must be repaid in full, without setoff, recoupment or deduction, "by no later than…the effective date of any confirmed Plan, unless Seacoast agrees to and consents, in writing, to other treatment under a Plan."

**5.2.3** The Debtor has notified Seacoast that it will be unable to repay the prepetition Obligations and/or Post-Petition Obligations in full at confirmation, since the Debtor does not anticipate having sufficient liquidity to pay, in full, all Obligations owing to Seacoast. In order to induce Seacoast to consent to a Plan, the Debtor has agreed to preserve for the benefit of Seacoast, and to grant to Seacoast, each of the following rights post-confirmation:

(i)     All existing and hereafter arising rights and interests granted to Seacoast, and all monetary and non-monetary obligations owed and hereafter owing to Seacoast by the Debtor and the Reorganized Debtor, under and in respect to the Post-Petition Agreements, and the Final Financing Order shall be and are hereby ratified and acknowledged, and approved without any modification.

(ii)    All of the rights and interests granted to Seacoast, and all monetary and non-monetary obligations owed and hereafter owing to Seacoast by the Debtor and the Reorganized Debtor under and in respect to the Post-Petition Agreements and the

16

Final Financing Order shall at all times be fully preserved, and shall remain in full force and effect post-confirmation and fully binding on the Debtor and the Reorganized Debtor and all parties-in-interest of the Debtor and the Reorganized Debtor.

(iii) The Debtor and the Reorganized Debtor, except for any monetary obligations altered by the Plan, expressly assume, upon entry of a Confirmation Order, all of the terms, duties and obligations under the Post-Petition Agreements and the Reorganized Debtor's continued operation thereunder, which shall be binding on and govern the factoring relationship between Seacoast and the Reorganized Debtor on and as of the Confirmation Date, except that Seacoast shall have no duty to comply with any terms contained in the Final Financing Order that no longer apply on or as of the Confirmation Date, including, but not limited to, the procedures contained in Sections 15 and 20 of the Final Financing Order. Upon Confirmation of the Plan, any security interests or liens provided to any Junior Secured Lenders under Paragraph 11 in the Final Financing Order shall automatically terminate and cease to exist.

(iv) Nothing contained in any Plan or any Confirmation Order approving a Plan, shall adversely effect, modify, enjoin, impair, interfere with, or negatively impact: (a) any of Seacoast's rights and/or the Debtor's and the Reorganized Debtor's obligations owing to Seacoast, under and with respect to the Post-Petition Agreements and the Final Financing Order, including, without limitation, Seacoast's first priority ownership interest in all Purchased Accounts (as defined by the Post-Petition Agreements) and Seacoast's duly perfected first priority security interest, liens and interests recognized or granted to Seacoast in the prepetition Collateral and post-petition Collateral (as defined in the Post-Petition Agreements and the Final Financing Order), including any non-Purchased Accounts and all proceeds thereof, and the Reserve, which are fully preserved and which Collateral shall continue to secure post-confirmation any now existing and hereafter arising advances, over-advances, fees and/or financial accommodations made to, and due from the Debtor and the Reorganized Debtor, and/or (b) any rights that Seacoast has or may hereafter have in respect to any supporting obligations (as such term is defined in the Uniform Commercial Code), including any guarantor of the Obligations under the Post-Petition Agreements.

(v) In the event the Debtor and/or the Reorganized Debtor defaults under the Post-Petition Agreements and/or the Plan, Seacoast shall be entitled to exercise and enforce all rights and remedies, under the and in respect to the Post-Petition Agreements, the Plan and applicable state law, free of any automatic stay under 11 U.S.C. § 362 or any injunction under 11 U.S.C. § 524(a), or otherwise.

17

(vi)     In the event of a breach of the Plan, and/or the Post-Petition Agreements, the Bankruptcy Court will retain non-exclusive, concurrent jurisdiction together with any state or federal court having subject matter and in personam jurisdiction over the subject matter and the parties as provided in the Post-Petition Agreements, to enforce to the terms of the Plan, and/or the Post-Petition Agreements between Seacoast and the Debtor, including the Reorganized Debtor, and the Debtor and the Reorganized Debtor each waive any right to contest the jurisdiction of any such state or federal court. In the event of any conflict or inconsistency between this section and Article XI below (Retention of Jurisdiction), this section shall control.

(vii)    Notwithstanding anything to the contrary, in the event of an express conflict between the terms of the Final Financing Order on the one hand, and the Plan, including the Plan Supplement, the Confirmation Order, or any authorizing amendment or modification to the Plan, on the other hand, the Final Financing Order will control.

(viii)   After the Confirmation Date or Effective Date, whichever is earliest, the Debtor and Seacoast shall be entitled to modify the terms of the Post-Petition Agreements without having to obtain authorization from the Bankruptcy Court or a modification of this Plan, provided, however, that Seacoast and the Reorganized Debtor shall provide notice to the Distribution Trustee of any modification, if any, that would affect any rights of the RWDY Distribution Trust.

(ix)     The Debtor acknowledges and agrees that in respect to the creation of the RWDY Distribution Trust as provided under Article IX in the Plan and any of the rights and powers granted, transferred, delegated, or otherwise, to any person under the RWDY Distribution Trust, including, but not limited to, the Distribution Trustee and any beneficiary of the Trust, shall not adversely effect, modify, enjoin, impair, interfere with, or negatively impact any of Seacoast's rights and/or the Debtor's (and the Reorganized Debtor's) monetary and non-monetary obligations to Seacoast under and with respect to the Post-Petition Agreements and the Final Financing Order except as provided herein. The Distribution Trustee is neither a party to the Post-Petition Agreements, nor an intended third-party beneficiary, and the Distribution Trustee has no rights or standing under the Post-Petition Agreements.

(x)      Upon notice by Seacoast to the Reorganized Debtor and the Distribution Trustee of the occurrence of any event which would be an Event of Default under the Post-Petition Agreements: (a) the Debtor's and the Reorganized Debtor's right to use any portion of any purchase price advances the Debtor receives from Seacoast for the purpose of funding any Monthly Distribution Amounts to the RWDY Distribution Trust shall terminate, and (b) the Distribution Trustee shall not accept any further

18

Monthly Distribution Amount from the Reorganized Debtor, unless and until such Event of Default is cured and Notice of same is withdrawn by Seacoast.

(xi) All Monthly Distribution Amounts which the Distribution Trustee receives prior to Seacoast's giving notice of an Event of Default as set forth in the preceding subparagraph (x) shall be received by the Distribution Trustee free and clear of any claim or lien of Seacoast, and the Distribution Trustee may therefore retain, make disbursements from, or otherwise use such Monthly Distribution Amounts received by the Distribution Trustee prior Seacoast's giving notice of an Event of Default to the Distribution Trustee as set forth in the preceding subparagraph (x) pursuant to the terms of the RWDY Distribution Trust.

(xii) Should the Reorganized Debtor remit any Monthly Distribution Amount to the Distribution Trustee after Seacoast has given notice of an Event of Default as set forth in the preceding subparagraph (x), the Distribution Trustee shall segregate and retain such funds for the benefit of, and subject to the security interest and lien of, Seacoast.

(xiii) In any and all events, the Distribution Trustee shall have no liability for funds disbursed in contravention of the preceding subparagraph (x)unless and until she receives notice of an Event of Default and of Seacoast's intent to trigger the provisions stated in Plan Section 5.2.3.(IX). The Distribution Trustee's Notice Address is set forth in section 13.12.

(xiv) As to Section 6.5 of this Plan, entitled "Re-Vesting of Assets," as of, on and after the Effective Date of the Plan, such provision will have no impact on any Purchased Accounts acquired by Seacoast or the Collateral in which Seacoast holds a security interest and no such Purchased Accounts or Collateral shall vest in the Reorganized Debtor free and clear of all liens, claims, Causes of Action, interests, or otherwise.

**5.2.4** The Class 2 Claim of Seacoast Business Funding is Impaired under the Plan.

**5.3** **Secured Claim of Bossier Federal Credit Union (Class 3)**:

**5.3.1** Class 3 shall consist of the Allowed Secured Claim of Bossier Federal Credit Union related to the purchase money loan used to acquire a 2017 Ford F 250 Pickup Truck.

**5.3.2** Bossier Federal Credit Union holds a Secured Claim in the allowed amount of $8195.46. It will be paid in 48 monthly installment payments of $189.67 that include interest at the rate of 5.25% per annum. The accrual of interest and the payments will commence on the on the 15th Day of the first month following the Plan's Effective Date.

19

**5.3.3** Retention of Liens: Bossier Federal Credit Union will retain the lien it currently holds, and its lien will remain in full force and effect until all payments to Bossier Federal Credit Union required under the Plan have been paid in full.

**5.3.4** Impairment: The Class 3 Secured Claim of Bossier Federal Credit Union is Impaired under the Plan.

### 5.4 The Merchant Cash Advance Lenders Unsecured Claims (Class 4):

**5.4.1** Class 4 shall consist of Merchant Cash Advance Lenders Unsecured Claims.

**5.4.2** All Class 4 Claims are disputed, unliquidated and contingent. The controversy includes, but is not limited to: whether Debtor is an obligated party under the Merchant Cash Advance Agreements; whether the transactions should be classified as loans; whether the transactions are subject to usury sanctions; the amount of the original disbursements for which Debtor may be liable; the proper application of payment credits; whether all or some of the prepetition payments are subject to avoidance as preferential transfers pursuant to 11 U.S.C. § 547 and/or avoidance as constructively fraudulent transfers made without adequate consideration pursuant to 11 U.S.C. § 548, whether any of the claimants have a perfected security interest in any property of the estate and the extent of any such interest under 11 U.S.C. § 506(a), and whether any of the claimants are subject to subordination or other Claims.

**5.4.3** The Class 4 Claims are treated pursuant to the *Class 4 MCA Claims Table.* The table states (i) the Name of each Class 4 MCA Lender Claim Holder; (ii) the contract date; (iii) the total amount disbursed by the MCA Lender Claim Holder; (iv) the amount repaid to the MCA Lender Claim Holder between the contract date and the petition date; (v) the balance after deducting the repayment; (vi) the proposed interest rate, term, monthly repayment and total repayment. The MCA Lender Claims are impaired under the Plan.

**CLASS 4 MCA CLAIMS TABLE**

| MCA Creditor: EIN Cap, Inc. | |
|---|---|
| Amount Disbursed: | $943,315.00 |
| Amount Repaid: | $173,694.10 |
| Balance: | $769,620.90 |
| Compromise Amount: | $846,582.99 |
| Interest Rate: | 5.25% |
| Term: | 60 Months |
| Monthly Disbursement: | $16,073.21 |
| Total Repayment: | $964,392.60 |
| | |

| MCA Creditor: Fox Capital Group, Inc. | |
|---|---|
| Amount Disbursed: | $950,000.00 |
| Amount Repaid: | $997,351.89 |
| Balance: | $0.00 |
| Compromise Amount: | $50,000.00 |
| Interest Rate: | 5.25% |
| Term: | 60 Months |
| Monthly Disbursement: | $949.30 |
| Total Repayment: | $56,958.00 |

| MCA Creditor: Mr. Advance, LLC | |
|---|---|
| Amount Disbursed: | $217,500.00 |
| Amount Repaid: | $61,200.36 |
| Balance: | $156,299.64 |
| Compromise Amount: | $171,929.60 |
| Interest Rate: | 5.25% |
| Term: | 60 Months |
| Monthly Disbursement: | $3,264.25 |
| Total Repayment: | $195,855.00 |

| MCA Creditor: Queen Funding, LLC | |
|---|---|
| Amount Disbursed: | $622,113.00 |
| Amount Repaid: | $252,500.00 |
| Balance: | $369,613.00 |
| Compromise Amount: | $406,574.30 |
| Interest Rate: | 5.25% |
| Term: | 60 Months |
| Monthly Disbursement: | $7,719.21 |
| Total Repayment: | $463,152.60 |

| MCA Creditor: Tailored Fund Cap LLC | |
|---|---|
| Amount Disbursed: | $1,887,464.29 |
| Amount Repaid: | $1,051,454.50 |
| Balance: | $836,009.79 |
| Compromise Amount: | $919,610.77 |
| Interest Rate: | 5.25% |
| Term: | 60 Months |
| Monthly Disbursement: | $17,459.72 |
| Total Repayment: | $1,047,583.20 |

| MCA Creditor: Tiger Capital Group LLC | |
|---|---|
| Amount Disbursed: | $4,390,000.00 |
| Amount Repaid: | $372,125.00 |
| Balance: | $4,017,875.00 |
| Compromise Amount: | $4,419,662.50 |
| Interest Rate: | 5.25% |
| Term: | 60 Months |
| Monthly Disbursement: | $83,911.64 |
| Total Repayment: | $5,034,698.40 |
| | |
| MCA Creditor: Vernon Capital Group LLC | |
| Amount Disbursed: | $3,015,600.00 |
| Amount Repaid: | $484,985.50 |
| Balance: | $2,530,614.50 |
| Compromise Amount: | $2,783,675.95 |
| Interest Rate: | 5.25% |
| Term: | 60 Months |
| Monthly Disbursement: | $52,850.83 |
| Total Repayment: | $3,171,049.80 |
| TOTALS | |
| Amount Disbursed: | $12,025,992.29 |
| Amount Repaid: | $3,393,311.35 |
| Balance: | $8,680,032.83 |
| Compromise Amount: | $9,598,036.11 |
| Interest Rate: | 5.25% |
| Term: | 60 Months |
| Monthly Disbursement: | $182,228.16 |
| Total Repayment: | $10,933,689.60 |

**5.4.4** Any MCA Lender may opt to have its Claim treated in accordance with the *Class 4 MCA Claims Table* by voting to accept the Plan. The Claim of any MCA Lender which opts to have its claim treated in accordance with the *Class 4 MCA Claims Table* by voting to accept the Plan will be compromised, established, and Allowed as of the Plan's Effective Date as an unsecured claim in the stated Compromise Amount less any payments made to or received by any MCA Lender between the Petition Date and the Effective Date. Subject to the provisions of this Plan, on the 15th day of the first full month following the Effective Date, and on the fifteenth day of each successive month, the RWDY Distribution Trust will make the Monthly Distributions specified in the *Class 4 MCA Claims Table* (adjusted for any payments made between the Petition Date and the Effective Date) until the Compromise Amount of each  MCA Lender's Allowed Claim is paid in full with interest. Notwithstanding the foregoing, in the event that the Debtor or

Reorganized Debtor, as the case may be, does not make a full Monthly Distribution Amount transfer to the RWDY Distribution Trust in accordance with Section 6.1, *infra*., the RWDY Distribution Trust shall only make a Distribution under the Plan on account of each Allowed Class 4 Claim from the total amount of the Monthly Distribution Amount transferred by the Debtor or Reorganized Debtor, as the case may be, to the RWDY Distribution Trust, on a Pro Rata basis with Distributions to other Allowed Class 4 Claims.  In such case, interest will continue to accrue on any and all such Allowed Class 4 Claims to the extent of the unpaid balance owed on each Allowed Class 4 Claim, but the monthly payment amount shall not be modified; instead the term shall be sufficiently extended to fully pay the Allowed Class 4 Claims.

For each MCA Lender opting to have its claim treated in accordance with the *Class 4 MCA Claims Table*, the Plan shall be deemed a motion to approve the good-faith compromise and settlement pursuant to which the Debtor settles the Settled Actions pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all the Settled Actions and as an acceptance of the Plan. By virtue of the compromise and settlement of the Settled Actions, each MCA Lender opting to have its claim treated in accordance with the *Class 4 MCA Claims Table*, (a) shall be fully and finally released by the Debtor, the Reorganized Debtor, and the Estate from the Settled Actions, including, but not limited to (i) any Claims Objection or any other action related to such MCA Lender's Claim, and (ii) any and all claims and Causes of Action that the Debtor, the Reorganized Debtor, the Estate, the Committee, or the Distribution Trustee could assert against any such MCA Lender or any non-debtor party with respect to such MCA Lender's Allowed Claim; and (b) such MCA Lender's Claim shall be Allowed in the Compromise Amount. Without limiting the foregoing, the compromise, settlement, and release of all Causes of Action against each MCA Lender opting to have its claim treated in accordance with the *Class 4 MCA Claims Table*  shall include all Causes of Action created by the Bankruptcy Code, including but not limited to, §§ 105, 501, 502, 506, 510, 544, 547, 548, 550, 551, and 1123(b)(5) of the Bankruptcy Code, Rules 3007 and 7001 of the Bankruptcy Rules. The compromises and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan. The Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise, settlement, and release of the Settled Actions, as well as a finding by the Bankruptcy Court that the settlement of the Settled Actions is in the best interests of the Debtor, their Estate, and the Holders of Claims and Interests, and is fair, equitable, and reasonable.

**5.4.5**  Any MCA Lender that does not opt to have its Claim treated in accordance with the *Class 4 MCA Claims Table* by voting to reject, and/or otherwise refusing to be bound by, the Plan will be treated as a Disputed Claim and Contested Claim, Contingent Claim, and Unliquidated Claim as to liability and amount. As such, the MCA Lender Claimholder not opting to have its Claim treated in accordance with the *Class 4 MCA Claims Table* will receive no payment or Distribution under the Plan on account of its Class 4 Claim or any portion of such Claim unless and until such Claim becomes an Allowed Claim; provided, however, to the extent that any such Claim is Allowed as a Secured Claim, the Claim Holder will retain its pre-petition lien securing its

Claim only to the extent of its interest in any prepetition Collateral, and shall be paid by deferred Cash payments of a specified value with interest at the rate of 5.25%, all in accordance with the other stated Class 4 payment provisions. No lien or security interest securing any Secured Claim in favor of any MCA Lender shall authorize or enable any MCA Lender to seek to collect or in any way interfere with Seacoast's senior and superior interests in any accounts and payment intangibles and any proceeds thereof or extend to or authorize any MCA Lender to take any actions which may, in any way, interfere with or impair Seacoast's rights in connection with any Collateral arising after the Petition Date. Each Withheld Distribution Amount shall be escrowed by the Distribution Trustee pursuant to the terms of the Plan, the Confirmation Order and the RWDY Distribution Trust Agreement.

If, when, and to the extent that the Claim of any MCA Lender that does not opt to have its Claim treated in accordance with the *Class 4 MCA Claims Table* (by voting to reject, and/or otherwise refusing to be bound by, the Plan) is Allowed as a Secured Claim, an Unsecured Claim, or both, then, except as the following may be affected by a judgment or order of the Bankruptcy Court affecting such MCA Lender's Claims (including, without limitation, a judgment or order decreeing equitable subordination or other relief against such MCA Lender):

A. The Distribution Trustee will disburse the aggregate sum comprising all Withheld Distribution Amounts with respect to such Secured Claim, Unsecured Claim or both, and begin making disbursements to the Holder of such newly Allowed Class 4 Claim of Claims in the amount set forth in the *Class 4 MCA Claims Table* pursuant to the terms of the Plan, the Confirmation Order, and the RWDY Distribution Trust Agreement.

B. The amounts, including the aggregate sum comprising all Withheld Distribution Amounts and amounts set forth in the *Class 4 MCA Claims Table*, that shall be distributed on such newly Allowed Class 4 Claims and, if such MCA Lender's Claim is Allowed in part as a Secured Claim and in part as an Unsecured Claim, all such amounts distributed to such MCA Lender shall be imputed in payment of such Secured Claim and Unsecured Claim in proportion to the amounts of such MCA Lender's Allowed Secured Claim and Allowed Unsecured Claim.

C. If the total amount of both the Allowed Secured Claim and Allowed Unsecured Claim held by the Holder of any newly Allowed Class 4 Claim exceeds the *Class 4 MCA Claims Table scheduled amount*, neither the interest rate nor the monthly payment amount shall be modified; instead, the term shall be sufficiently extended to fully pay the MCA Lender's Allowed Class 4 Claim, including the MCA Lender's Allowed Secured Claim and Allowed Unsecured Claim.

**5.4.6** The Class 4 Merchant Lender Claims are impaired under the Plan.

**5.5.  The Jason Brazzel Drill Pro Consulting LLC Claim (Class 5):**

**5.5.1**  Class 5 shall consist of Jason Brazzel's Claim under the Drill Pro Consulting, LLC Agreement which has been filed as Claim 11 in the Chapter 11 Case.

**5.5.2** The Holder of the Class 5 Claim will receive the following treatment at his option. Either:

Option A: The Claimholder of the Class 5 Claim will contribute the Class 5 Claim to the Debtor on the Effective Date. In return, the Reorganized Debtor shall issue 20% of the Reorganized Debtor's common stock to Jason Brazzel, and Jason Brazzel shall accept such stock, shall agree to the Reorganized Debtor's issuance of stock in the Reorganized Debtor to the Equity Interest Holder as set forth in 5.9.1, and shall agree that the Class 5 Claim shall be deemed satisfied in full; or

Option B: If the Class 5 Claim Claimholder does not opt to have his Claim treated in accordance with Option A by voting to accept the Plan, then the Class 5 Claim will be treated as a Disputed Claim and Contested Claim, a Contingent Claim, and an Unliquidated Claim, undetermined as to liability and amount. As such, the Class 5 Claim Claimholder will receive no payment or distribution hereunder on account of its Class 5 Claim or any portion of such Claim unless and until such Disputed Claim and/or Contested Claim becomes an Allowed Claim; provided, however, that any such Disputed Claim and/or Contested Claim may only be classified as an Unsecured Claim.

Pending the Class 5 Claim being Allowed, the Reorganized Debtor shall pay the amount of $10,000 per month into the RWDY Distribution Trust. The Class 5 Claim Claimholder will receive no payment or distribution hereunder on account of his Class 5 Claim or any portion of such Claim unless and until such Disputed Claim and/or Contested Claim becomes an Allowed Claim. Prior to the Class 5 Claim becoming an Allowed Claim, the Distribution Trustee shall escrow, pursuant to the terms of the Plan, the Confirmation Order and the RWDY Distribution Trust Agreement, each monthly payment made by the Reorganized Debtor as set forth in the foregoing sentence, and each such monthly payment made by the Reorganized Debtor shall be treated as a Withheld Distribution Amount. If, when, and to the extent that the Disputed Class 5 Claim is allowed, the Distribution Trustee will disburse the aggregate sum of Withheld Distribution Amounts with respect to such Claim and begin making disbursements in the Monthly Disbursement Amount of $10,000 until the Allowed Class 5 Claim is paid in full with interest at the rate of 5.25% per annum. Notwithstanding the foregoing, neither the Distribution Trustee nor the RWDY Distribution Trust shall be required to escrow any amount on account of the Disputed Class 5 Claim should the Debtor or Reorganized Debtor, as the case may be, not make a full Monthly Distribution Amount transfer to the RWDY Distribution Trust in accordance with Section 6.1, *infra*. If, when, and to the extent that the Disputed Class 5 Claim is Allowed, should the Debtor or Reorganized Debtor, as the case may be, not make a full Monthly Distribution Amount transfer to the RWDY Distribution Trust in accordance with Section 6.1, *infra*, the RWDY Distribution Trust shall only make a

Distribution under the Plan on account of the Allowed Class 5 Claim from the total amount of the Monthly Distribution Amount transferred by the Debtor or Reorganized Debtor, as the case may be, to the RWDY Distribution Trust, on account of the Class 5 Claim and General Unsecured Claims, which Distribution shall be made on a Pro Rata basis among the Holder of the Allowed Class 5 Claim and Holders of any General Unsecured Claims.

**5.5.3** The treatment of Class 5 under Option A of Section 5.5.2 shall be a Settled Action pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of the Settled Action and as an acceptance of the Plan.

**5.5.4** In the event that the Class 6 Claim Claimholder does not opt to have his Claim treated in accordance with Option A of Section 5.6.2 by voting to accept the Plan, and the Class 5 Claim Claimholder opts to have his Claim treated in accordance with Option A of Section 5.5.2 by voting to accept the Plan, then the Class 5 Claim Claimholder shall also receive the 20% of the Reorganized Debtor's common stock that would have been issued to the Class 6 Claim Claimholder under Option A of Section 5.6.2.

**5.5.5** The Class 5 Claim is impaired under the Plan.

**5.6** <u>**The Kenneth Lowery Drill Pro Consulting LLC Claim (Class 6):**</u>

**5.6.1** Class 6 shall consist of the Claim of Kenneth Lowery that will arise under the Drill Pro Consulting, LLC Agreement upon the rejection of that agreement as an executory contract.

**5.6.2** The Holder of the Class 6 Claim will receive the following treatment at his option. Either:

Option A: The Drill Pro Consulting, LLC Agreement shall be deemed rejected as an executory contract, and the Holder of the Class 6 Claim will contribute the Class 6 Claim to the Reorganized Debtor on the Effective Date. In return, the Reorganized Debtor shall issue 20% of the Reorganized Debtor's common stock to Kenneth Lowery, and Kenneth Lowery shall accept such stock, shall agree to the Reorganized Debtor's issuance of stock in the Reorganized Debtor to the Equity Interest Holder as set forth in 5.9.1, and shall agree that the Class 6 Claim shall be deemed satisfied in full; or

Option B: If the Class 6 Claim Claimholder does not opt to have his Claim treated in accordance with Option A by voting to accept the Plan, then the Class 6 Claim will be treated as follows: The Drill Pro Consulting, LLC Agreement will be recognized as constituting an executory contract, the Debtor shall assume the Drill Pro Consulting, LLC Agreement as an executory contract vis-a-vis the Class 6 Claim Claimholder, and the Class 6 Claim Claimholder shall retain his rights under the Drill Pro Consulting, LLC Agreement. As a result of the assumption of the Drill

Pro Consulting, LLC Agreement and continuation of the Class 6 Claim Claimholder's rights thereunder, such contract shall be deemed not to be in default and the assumption of the contract shall, ipso facto, constitute adequate assurance of future performance under such contract. Any Claim under the Drill Pro Consulting, LLC shall be deemed to be unmatured. Therefore, no payment shall be made on the Class 6 Claim.

**5.6.3**   The treatment of Class 6 under Option A of Section 5.6.2 shall be a Settled Action pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of the Settled Action and as an acceptance of the Plan.

**5.6.4** In the event that the Class 5 Claim Claimholder does not opt to have his Claim treated in accordance with Option A of Section 5.5.2 by voting to accept the Plan, and the Class 6 Claim Claimholder opts to have his Claim treated in accordance with Option A of Section 5.6.2 by voting to accept the Plan, then the Class 6 Claim Claimholder shall receive the 20% of the Reorganized Debtor's common stock that would have been issued to the Class 5 Claim Claimholder under Option A of Section 5.5.2.

**5.6.4**   The Class 6 Claim is impaired under the Plan.

**5.7**   __The JPMorgan Chase PPP CARES ACT Claim (Class 7__):

**5.7.1** Class 7 shall consist of the JPMorgan Chase PPP CARES ACT Claim in the amount of $448,497.44.

**5.7.2**   The Reorganized Debtor will fully comply with the requirements for loan forgiveness pursuant to the Paycheck Protection Program under the CARES Act, and that compliance includes, but is not limited to, the requirements for forgiveness such as eligible expenditures, necessary records/documentation, required Borrower certifications, or possible reductions due to changes in number of employees or compensation and all other provisions set out in the SBA's Paycheck Protection Program Materials. Simply stated, the loan will be extinguished by forgiveness based on the Debtor's compliance with the program requirements.

**5.7.3**   Should it be necessary for the Reorganized Debtor to make payments to meet program requirements for loan forgiveness or in the event that the loan is not forgiven at all pursuant to the Paycheck Protection Program under the CARES Act, the Reorganized Debtor will make such required payments based on the Proof of Claim filed by JPMorgan Chase Bank, N.A.

**5.7.4** The Class 7 Claim is impaired under the Plan.

**5.8  General Unsecured Claims (Class 8)**:

    **5.8.1**  Class 8 shall consist of all other Allowed Unsecured Claims against the Debtor not placed in any other class, and, without limiting the foregoing, shall not include any Unsecured Claims of any MCA Lender (such Claims being provided for in Class 4), the Unsecured Claim of Jason Brazzel (such Claim being provided for in Class 5), the Unsecured Claim of Ken Lowery (such Claim being provided for in Class 6), or the JP Morgan Chase PPP CARES ACT Claim (such Claim being provided for in Class 7). Creditors holding Allowed Class 8 General Unsecured Claims shall be paid 100% of their Allowed Class 8 Claims, plus interest at the rate of 5.25%,  by the RWDY Distribution Trust pursuant to the terms of the Plan, the Confirmation Order and the RWDY Distribution Trust Agreement.

    **5.8.2**  Each holder of an Allowed Class 8 Claim shall receive its Pro Rata share of an aggregate monthly distribution of $10,000.00  from the RWDY Distribution Trust until all Allowed Class 8 non-priority Unsecured Claims are paid in full. Notwithstanding the foregoing, in the event that the Debtor or Reorganized Debtor, as the case may be, does not make a full Monthly Distribution Amount transfer to the RWDY Distribution Trust in accordance with Section 6.1, *infra.*, the RWDY Distribution Trust shall only make a Distribution under the Plan on account of each Allowed Class 8 Claim from the total amount of the Monthly Distribution Amount transferred by the Debtor or Reorganized Debtor, as the case may be, to the RWDY Distribution Trust on account of the Class 8 Claims and the Class 5 Claim on a Pro Rata basis among the Holders of any Allowed Class 8 Claims and the Holder of any Allowed Class 5 Claim.  In such case, the monthly payment amount shall not be modified; instead the term shall be sufficiently extended to fully pay the Allowed Class 8 Claims.

    **5.8.3**  The Class 8 General Unsecured Claims are Impaired under the Plan.

**5.8  Equity Interest Holders (Class 9)**:

    **5.9.1**  Class 9 shall consist of the sole Equity Interest Holder, Brian T. Owen, who holds 100% of the issued and outstanding stock in Debtor. The Class 9 Equity Interest Holder will transfer 100% of the issued and outstanding stock in Debtor to the Debtor. In consideration of the contribution of the Class 5 and/or Class 6 Claims by the Holders thereof as an infusion of capital and in further consideration thereof, the Reorganized Debtor shall issue 60% of the Reorganized Debtor's common stock to Brian T. Owen. Brian T. Owen will receive nothing additional under the Plan. The Class 9 Equity Interest Holder's vote will not count towards votes tabulated for purposes of any possible cramdown under Section 1129(b).

    **5.9.2**  The treatment of Class 5 and/or Class 6, and the treatment of Class 9, shall be a Settled Action pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of the Settled Action and as an acceptance of the Plan.

**5.9.3**    The New Equity Owners shall be the owners of the stock in the Reorganized Debtor.

**5.9.4**  The Class 9 Equity Interest Holder's Claim is Impaired under the Plan.

**5.10    Payments to the United States Trustee**: The Reorganized Debtor shall be responsible for timely payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. 1930(a)(6).  Any fees due as of the date of the Confirmation Hearing will be paid in full on the Effective Date of the Plan. After confirmation, the Reorganized Debtor shall pay United States quarterly fees as they accrue until this case is closed by the Bankruptcy Court.  The Reorganized Debtor shall file with the Bankruptcy Court and serve on the United States Trustee a quarterly financial report for each quarter (or portion thereof) that the case remains open in a format prescribed by the United States Trustee.

**ARTICLE VI**
**MEANS OF IMPLEMENTING THE PLAN**

**6.1  Continued Operations of RWDY:** The Reorganized Debtor shall continue to operate its business following the Effective Date. The Reorganized Debtor shall only be required to timely fund and transfer to recipients authorized under this Plan the Debtor Distributions, Professional Fee Claims, including, but not limited to, the Debtor's and Reorganized Debtor's attorneys and other professionals, United States Trustee quarterly fees incurred pursuant to 28 U.S.C. 1930(a)(6), and the Monthly Distribution Amounts required to be distributed to the RWDY Distribution Trust.

**6.2    Post Effective Date Management**: The Reorganized Debtor shall continue to exist after the Effective Date in accordance with the applicable laws of the State of Texas, in which it was formed, for the purposes of operating its business and satisfying its obligations under the Plan. The Reorganized Debtor shall be owned by the New Equity Owners. The New Equity Owners will serve as directors of the Reorganized Debtor unless and until any of such directors resign, are incapacitate, or are replaced. The New Equity Owners shall not receive compensation for their role as directors of the Reorganized Debtor. Brian Owen shall serve as President of the Reorganized Debtor and shall be paid a fixed annual salary of $120,000.00 in monthly, or semi-monthly installments. Ken Lowery shall serve as Secretary Treasurer of the Reorganized Debtor and shall be paid a fixed annual salary of $102,000.00 in monthly, or semi-monthly installments. The New Equity Owners may be paid additional compensation as set forth in and subject to the requirements of Section 6.12, infra.

**6.3  Corporate Action**: The entry of the Confirmation Order shall constitute authorization for the Reorganized Debtor to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been

29

authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation. The management of the Reorganized Debtor is authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and to take all necessary actions required in connection therewith, in the name of and on behalf of the Debtor and Reorganized Debtor.

**6.4 Documents**: All documents necessary for the implementation of this Plan shall be executed by all necessary parties in interest on the Effective Date, unless an earlier date is provided for a particular document or documents under this Plan. To the extent that the parties in interest herein are unable to agree on the form or substance of such documents, such unresolved issues shall be submitted to the Court for determination. Upon the Effective Date, or as soon as practicable thereafter, the Court shall have resolved said issues and all such documents shall be binding on the Debtor, the Creditors, and all other parties hereto.

**6.5 Re-Vesting of Assets**: On the Effective Date, except as otherwise provided in this Plan and except as to any assets transferred to the RWDY Distribution Trust pursuant to Article IX, *infra*, title to all of the Debtor's assets shall vest in the Reorganized Debtor free and clear of all liens, Claims, Causes of Action, interests, security interest and other encumbrances and without further order of the Bankruptcy Court. On and after the Effective Date, except as otherwise provided in this Plan, the Reorganized Debtor may operate its business and may use, acquire and dispose of its assets free of any restriction of the Bankruptcy Code. Nothing contained herein shall impair the provisions of Plan Article IX providing for transfers to the RWDY Distribution Trust or the provisions of the RWDY Distribution Trust Agreement.

**6.6 Creation of the RWDY Distribution Trust**: On the Effective Date and in accordance with the provisions of Article IX, *infra*, the Debtor shall enter into the RWDY Distribution Trust Agreement and make transfers of property as required therein, including but not limited to certain Assigned Causes of Action and the Initial Distribution Trust Funds as required therein.

**6.7 Incorporation of Bankruptcy Rule 9019**: To the extent necessary to effectuate and implement the compromises and releases contained in the Plan, the Plan shall be deemed to constitute a motion under Bankruptcy Rule 9019 seeking the Bankruptcy Court's approval of all of the compromises contained herein.

**6.8 Incorporation of Valuation Motion**: To the extent necessary to effectuate and implement the provisions of this Plan, the Plan shall be deemed to constitute a motion for valuation under the Bankruptcy Code, including to value any lien, security interest, or encumbrance treated by this Plan; provided, however, that nothing in this Plan shall alter any valuation ordered by Final Order of the Bankruptcy Court in the Chapter 11 Case.

**6.9 <u>Automatic Stay</u>**: The automatic stay provided in Section 362 of the Bankruptcy Code, shall remain in effect through the Effective Date, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to a separate order, and shall terminate on the Effective Date.

**6.10 <u>Corporate Organizational Documents</u>**: The Corporate Organizational Documents have been or will be amended on or prior to the Effective Date to prohibit the issuance of non-voting equity member interests to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code, thereby satisfying section 1123(a)(6) of the Bankruptcy Code. The Corporate Organizational Documents have been or will be amended on or prior to the Effective Date to provide the following:

A. The number of directors of the Reorganized Debtor shall be equal to the number of the New Equity Owners.

B. The shares of stock in the Reorganized Debtor shall be subject to a restriction that no shares may be subject to any assignment, sale, conveyance, or other transfer by, or as the result of, any seizure, sale, execution or other legal process or remedy, whether voluntarily or involuntarily, except upon a sale in enforcement of a security interest granted therein with the consent and approval of all of the New Equity Owners holding 100% of the outstanding shares of stock in the Reorganized Debtor.

C. In the event of the death of any New Equity Owner, the Reorganized Debtor and the other New Equity Owner(s) shall have the right to purchase the shares of stock of the deceased New Equity Owner for a price equal to the book value thereof determined as of last day of the month following such New Equity Owner's death, and with the purchase price to be payable in equal installments over a term of sixty (60) months without interest. The Reorganized Debtor shall have such right to purchase the shares of stock of the deceased New Equity Owner by giving notice of its exercise of such right within ninety (90) days of such New Equity Owner's death. Should the Reorganized Debtor not exercise its right within ninety (90) days of such New Equity Owner's death, then the surviving New Equity Owner(s) shall have such right to purchase the shares of stock of the deceased New Equity Owner by giving notice of its exercise of such right within the period of ninety-one (91) to one hundred eighty (180) days after such New Equity Owner's death. Each surviving New Equity Owner shall have the right to purchase one-half (1/2) of the shares owned by the deceased New Equity Owner. In the event that any New Equity Owner elects to purchase less than one-half (1/2) of the shares owned by the deceased New Equity Owner, then the other New Equity Owner may exercise such right to purchase all other shares of stock of the deceased New Equity Owner or such lesser number thereof.

D. Each person who holds any shares of stock in the Reorganized Debtor shall execute an agreement (a) not to do any of the following during any time that such person owns or holds such shares of stock and within a period of two years thereafter: (i) solicit any

31

employee, agent, consultant, director, independent contractor, member, officer, official, partner, servant or other person performing any work or services for the Reorganized Debtor to work or provide services to any business other than the business of the Reorganized Debtor; and/or (ii) solicit any customers of the Reorganized Debtor to do any business of contract for any goods or services with any Entity other than the Reorganized Debtor; and (b) not to use any information which the Reorganized Debtor deems to be confidential other than strictly as authorized in writing by Company or disclose any Confidential Information to any Person. Such agreement shall specify the geographic areas in which it shall be applicable by parishes, counties, municipalities, or otherwise as necessary to render same enforceable under Louisiana law.

**6.11** **Rights Under 1129(b)**: If any impaired class votes to accept the Plan, but not all classes accept the Plan; the Debtor will seek confirmation under the cram down provisions of Section 1129(b) of the Bankruptcy Code and hereby gives notice of intent to invoke the cram down provisions of Section 1129(b) in that event.

**6.12 Additional Compensation to and Contribution by New Equity Owner**.

**6.12.1** **Additional Compensation:** New Equity Owners who are employees of the Reorganized Debtor during the any tax year of the Reorganized Debtor ("Owner-Employee") shall be eligible to be paid Additional Compensation immediately prior to the end of each tax year for the Reorganized Debtor which shall be calculated, and subject to restrictions, as follows:

A. The available amount of the Additional Compensation to be paid to all Owner-Employee[s] shall be capped at an amount that does not exceed the amount that would, in the absence of any payment of Additional Compensation, constitute taxable profit of the Reorganized Debtor for the tax year minus any amount necessary to be reserved by the Reorganized Debtor for the payment of any corporate income taxes or other taxes owed by it to the federal and any state, local or other governments; and

B. The amount of the Additional Compensation which may be paid to each Owner-Employee shall be determined by the following formula: Each Owner-Employee's percentage ownership interest in the Reorganized Debtor multiplied by the total Additional Compensation available under Paragraph (A), supra.[1]

---

[1] For clarity and as an example, if Owen owns 60% of the outstanding shares of the Reorganized Debtor, and the amount of Additional Compensation available under 6.13.1(A) is $100 for a particular tax year, then under this 6.13.1(B), Owen would be entitled to receive $60 in Additional Compensation for such tax year.

32

**6.12.2 Contribution:** From the Additional Compensation received by Owen under Section 6.12.1, if any, an amount equal to thirty percent (30%) percent of such Additional Compensation due to Owen shall be paid by Owen to the RWDY Distribution Trust, and Owen shall retain the remaining amount of the Additional Compensation and be responsible to pay all Income Generated Taxes which may be owed by him on account of the total amount of the Additional Compensation paid to him. If such a payment of Additional Compensation is made to Owen, the Distribution Trustee may immediately deduct and pay him/herself 2.5% of the Additional Compensation paid by Owen to the RWDY Distribution Trust as a commission authorized under Section 9.10 of this Plan, and further shall immediately (or as soon as practicable) distribute the balance of such funds to the Beneficiaries of the RWDY Distribution Trust in accordance with the priority of payment scheme set forth in Sections 9.11.2 and 9.11.3, *infra*. Except as expressly authorized in this section (commission purposes), such funds transferred and received by the RWDY Distribution Trust under this Section shall not be subject to reservation by the Distribution Trustee or payment of RWDY Distribution Trust expenses. The RWDY Distribution Trust may make reasonable requests to verify and account for the calculation and payment of all such Additional Compensation, including review of tax returns relating to the Income Generated Taxes owed by Owen. The provisions of this Section shall continue until all Allowed Claims have been paid in full or the RWDY Distribution Trust terminates and dissolves.

**6.13 <u>Owen Guaranty</u>**. The Debtor's present Interest Holder, Owen, owes the Debtor the Owen Debt in the amount of $20,397,221.00 for loans made by the Debtor to Owen shown as "Due from stockholder" on the Debtor's balance sheet.

Owen has agreed to execute, on or before the Effective Date, the Owen Guaranty, being a guaranty by which Owen shall guarantee the payment of the obligations of the Reorganized Debtor to the RWDY Distribution Trust, including without limitation the Allowed Claims in Classes 4, 5 and 8.

The Owen Guaranty shall be issued by Owen, as guarantor, in favor of the RWDY Distribution Trust, as obligee. Owen shall further execute, or cause to be executed, mortgages and security agreements encumbering the following property as security for the Owen Guaranty, subject only to mortgages and liens recorded prior to December 31, 2020:

LOT 134 NORRIS FERRY LANDING SUBDIVISION, UNIT NO. 5, a subdivision in the City of Shreveport, Caddo Parish, Louisiana, as per plat recorded in Book 5000, Page(s) 75-76 of the Conveyance Records of Caddo Parish , Louisiana;

Lot 1, Forbing Annex Home Sites, Unit No. 11, a subdivision of the City of Shreveport, Caddo Parish, Louisiana, as per the plat recorded under Registry No. 2725992 in Book 9000, Page 35 of the Conveyance Records of Caddo Parish, Louisiana, together with all buildings and improvements located thereon, having a municipal address of TBD Wallace Lake Road, Shreveport, LA 71106. [GEO 171307-061-0001-00];

33

Undivided interest in that certain lot of ground, together with all buildings and improvements located thereon, situated in Sabine Parish, Louisiana, and more particularly described as follows:

> Lot Number Six (6) of Flora Ridge Subdivision, a subdivision located in the Southeast Quarter of the Northwest Quarter of Section 3, Township 6 North, Range 13 West, Sabine Parish, Louisiana, being more particularly shown on a plat of survey by Douglas W. Dockens, dated April 9, 2010, filed under Instrument Number 441842, records of Sabine Parish, Louisiana. Together with all right, title and interest in and to the lease and leaseback area adjacent to and contiguous with the above described property; and

Any and all other immovable property owned in whole or in indivision by Owen, and any and all ownership interests Owen may have in the Owen Affiliated Entities.

Owen, the Reorganized Debtor, and the RWDY Distribution Trust shall confect and execute the form of the (a) settlement agreement, (b) Owen Guaranty, (c) Forbearance Agreement, (d) security agreements, and (e) mortgages and other indicia of perfection of security interests, which shall be provided as part of the Plan Supplement. The Forbearance Agreement shall provide that the Distribution Trustee and the RWDY Distribution Trust shall forbear from making demand on, executing, or attempting to collect in any way upon the Owen Guaranty, and the property and security provided therefor, for so long as the injunction set forth in Section 13.10, *infra*, is in effect. Notwithstanding the foregoing, the Distribution Trustee and the RWDY Distribution Trust may record such instruments deemed necessary to perfect any mortgage or security interest granted by Owen to the RWDY Distribution Trust to secure the Owen Guaranty, which mortgages and security interests shall be subordinate only to prior perfected mortgages and security interests existing and enforceable under applicable law.

Nothing contained in this Plan shall be construed or interpreted as a release, waiver, discharge, or forgiveness of the Owen Debt.

## ARTICLE VII
### PROVISIONS FOR THE ASSUMPTION AND REJECTION OF
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.1  Assumption of the Master Service Agreements**: On the Effective Date, the Master Service Agreements between the Debtor and the counterparties to the Master Service Agreements shall be assumed.  The Plan and the Confirmation Order shall constitute an order approving the assumption. The Master Service Agreements shall be retained by the  Reorganized Debtor pursuant to the Plan.

**7.2  General Assumption of All other Executory Contracts**: All other executory contracts and unexpired leases listed on the Debtor's Schedules, which are not expressly rejected on or before the Confirmation Date or not otherwise specifically treated in this Plan or in the

34

Confirmation Order shall be deemed to have been assumed on the Confirmation Date. The Bankruptcy Court shall retain jurisdiction to effectuate any post-confirmation assumption and assignment of leases, and such assumption and assignments shall be performed pursuant to Section 365 of the Bankruptcy Code.  Each prepetition executory contract and unexpired lease will be assumed only to the extent that any such contract or lease constitutes an executory contract or unexpired lease.  Listing a contract or lease as an executory contract or unexpired lease will not constitute an admission by the Debtor, or the Debtor-in-Possession that such contract or lease is an executory contract or unexpired lease or that any Debtor, or the Debtor-in-Possession has any liability thereunder.  The Confirmation Order shall constitute an Order of the Bankruptcy Court approving assumption under Section 365 of the Bankruptcy Code as of the Effective Date.  The Reorganized Debtor shall continue to have all rights of assignment contained in 11 U.S.C. § 365 of any executory contract or unexpired lease following Confirmation of this Plan.

      **7.3** __Cure of Defaults__: Unless otherwise provided for in the Plan, the Reorganized Debtor shall cure all defaults existing under any assumed Executory Contract pursuant to the provisions of Sections 1123(a)(5)(G) and 365(b) of the Bankruptcy Code, by paying the amount, if any, claimed by any party to such Executory Contract as set forth in a proof of claim, which shall be filed with the Court upon the earlier of (a) 30 days after express notice is given of the Debtor's intent to assume such Executory Contract or (b) within sixty (60) days after the Confirmation Date.  Such proof of claim shall be titled "Assumption Cure Proof of Claim." Alternatively, the Reorganized Debtor may pay such amount as may be agreed upon between the Reorganized Debtor and any party to such Executory Contract, provided an Assumption Cure Proof of Claim is timely filed within thirty (30) days after the Confirmation Date. Payment of any amount claimed in an Assumption Cure Proof of Claim or otherwise agreed to shall be in full satisfaction, discharge and cure of all such defaults (including any other Claims filed by any such party as a result of such defaults), provided, however, that if the Reorganized Debtor files, within forty-five (45) days of the filing of an Assumption Proof of Claim, an objection in writing to the amount set forth, the Court shall determine the amount actually due and owing with respect to the defaults or shall approve the settlement of any such Claims. Payment of such Claims shall be made by the Reorganized Debtor on the later of: (a) ten (10) Business Days after the expiration of the forty-five day (45) period for filing an objection to any Assumption Cure Proof of Claim filed pursuant to this section; or (b) when a timely objection is filed, within ten (10) Business Days after an order of the Court allowing such Claim becomes a Final Order.

      **7.4** __Claims for Damages__: Any Claims based upon rejection of an executory contract or unexpired lease under the Plan must be filed with the Bankruptcy Court and served on the Reorganized Debtor such that they are actually received within thirty (30) days of the entry of an order rejecting such contract or lease. Objections to any such proof of claim shall be filed not later than thirty (30) days after receipt of such claim. The Court shall determine any such objections, unless they are otherwise resolved.  All Allowed Claims for rejection damages shall be treated as a Class 8 General Unsecured Claim.  Any Claim not filed within such time will be forever barred from assertion against the Debtor or its Estate.

**7.5  Reservation of Rights**: The Debtor reserves the right to file applications for the assumption or rejection of any executory contract or unexpired lease at any time prior to ninety (90) days after the Confirmation Date.

**ARTICLE VIII**
**RESOLUTION OF UNDETERMINED CLAIMS**

**8.1  Standing**: Except as otherwise provided by prior order of the Court, the Debtor has standing to object to Claims and proofs of claim before the Claims Objection Deadline.

**8.2  Effect of Bar Date**: In accordance with Federal Rule of Bankruptcy Procedure 3003(c) any Creditor whose claim was not scheduled, or holds a Contingent Claim, Unliquidated Claim, or Disputed Claims or Contested Claims, and did not file a proof of claim before the Bar Date or thereafter as allowed by Order of the Court, shall not be treated as a Creditor with respect to such claim for purposes of voting or distribution.

**8.3  Amendments to Claims; Claims Filed After the Confirmation Date**: Except as otherwise provided in the Plan, and subject to the Bar Date, a Claim may not be amended after the Confirmation Date without prior authorization of the Bankruptcy Court. Except as otherwise provided in the Plan, any amended Claim filed with the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without the need for any action by the Reorganized Debtor.

**8.4  Claims Objection Deadline**: Within ninety (90) days from the Effective Date, unless such date is extended by Order of the Court after notice and hearing, the Reorganized Debtor may file with the Court objections to Claims and interests and shall serve a copy of each such objection upon the Holder of the Claim or interest to which such objection pertains.  Unless arising from an Avoidance Action, any proof of Claim filed after the Effective Date shall be of no force and effect and need not be objected to.  Any Undetermined Claim may be litigated to Final Order. The Reorganized Debtor may, with the consent of the Distribution Trustee, compromise and settle any Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of an Undetermined Claim after the Effective Date; provided, however, no settlement shall in any way alter, vary, modify or otherwise adversely impact any of the rights provided to any party-in-interest contained in the Plan. Nothing in this Plan extends the Bar Date set in the Chapter 11 Case or grants any Creditor any greater rights with respect to a late-filed Claim than such Creditor otherwise has.  Unless otherwise ordered by the Court, the Reorganized Debtor shall litigate to judgment, settle or withdraw objections to Contested Claims and/or Disputed Claims.

**8.5  Creditor Response to Objection**: With respect to any objection to a Claim when such objection is filed after the Effective Date but otherwise in compliance with this Plan, the Creditor whose Claim was the subject of the objection must file with the Bankruptcy Court and serve a

response to the objection upon the Reorganized Debtor or the RWDY Distribution Trust, as the case may be, no later than thirty (30) days from the date of service of any such objection. Failure to file and serve such a response within the thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the objection without further notice to such Creditor. Any such objection shall contain prominent negative notice language informing the objected-to creditor of the same. This requirement notwithstanding: should the Objection to Claim be asserted in an Adversary Proceeding, the response will be superseded by any Scheduling Order or other Order fixing a response date applicable to the action.

**8.6** **No Payment Pending Allowance**: Notwithstanding any other provision in the Plan, if any portion of a Claim is disputed or is an Undetermined Claim, then no payment or distribution hereunder shall be made on account of any portion of such Claim unless and until such Disputed Claim or Contested Claim becomes an Allowed Claim.

**8.7** **Allowance of Claims**: At the time, and to the extent that an Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to such distributions provided under the Plan. Such distributions shall be made in the manner provided for by this Plan, the terms of any Final Order of the Court with respect to such Allowed Claim and the RWDY Distribution Trust. If an allowed claim exceeded the scheduled amount, neither the interest rate nor the monthly payment amount shall be modified; instead, the term shall be sufficiently extended to fully pay the Allowed Claim.

**ARTICLE IX**

**9.1** **The RWDY Distribution Trust Agreement**

On the Effective Date, the Debtor and the Distribution Trustee shall execute the RWDY Distribution Trust Agreement. The RWDY Distribution Trust shall be a liquidating trust for United States federal income tax purposes. The Debtor and the Distribution Trustee shall take all other necessary steps including the transfer from the Debtor to the RWDY Distribution Trust of the Initial Distribution Trust Funds to settle the RWDY Distribution Trust. The RWDY Distribution Trust Agreement may provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the Distribution Trust as a liquidating trust for United States federal income tax purposes, or otherwise materially affect the recovery of the Trust Beneficiaries.

**9.2** **Purpose of the RWDY Distribution Trust**

The RWDY Distribution Trust shall be established for the sole purpose of liquidating and distributing the Trust Assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

37

**9.3**     **Fees and Expenses of the RWDY Distribution Trust**

All fees, expenses, and costs of the RWDY Distribution Trust shall be paid from (i) the Initial Distribution Trust Funds, and (ii) the portion of the Monthly Distribution Amount paid by the Reorganized Debtor to the RWDY Distribution Trust designated under clause (iv) of the definition of the term "Monthly Distribution Amount," and (iii) the Other Trust Assets. Neither the Debtor nor the Reorganized Debtor shall be responsible for any fees, expenses, and costs of the RWDY Distribution Trust other than through the transfers of the Initial Distribution Trust Funds and Other Trust Assets upon establishment of the RWDY Distribution Trust. The Distribution Trustee may retain counsel and other professionals under such fee arrangement and other terms and conditions as the Distribution Trustee determines to be appropriate, without necessity of Bankruptcy Court approval of such engagements or of payment of fees and expenses incurred by such counsel and other professionals.

**9.4**     **Assignment to and Funding of the RWDY Distribution Trust**

As of the Effective Date, the Debtor shall assign and transfer to the RWDY Distribution Trust the Initial Distribution Trust funds and all Assigned Causes of Action held or possessed by the Debtor against any persons or entities as of the Effective Date. Thereafter, the Reorganized Debtor shall be required to make the Monthly Distribution Amounts on or before the 5th day of the first full calendar month after the Effective Date, and prior to the 5th day of each calendar month thereafter, until all Allowed Claims have been paid in full under the terms of the Plan. Trust Assets, and any proceeds thereof, shall be deemed to have been transferred to the RWDY Distribution Trust free and clear of all Claims and Equity Interests, Liens, charges and encumbrances, except as set forth in this Plan. The transfer(s) of the Trust Assets shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax.

**9.5**     **Governance of the RWDY Distribution Trust**

The RWDY Distribution Trust shall be governed by the RWDY Distribution Trust Agreement and administered by the Distribution Trustee. Such RWDY Distribution Trust Agreement shall comply with, and such Distribution Trustee shall administer the RWDY Distribution Trust in accordance with, the advance ruling guidelines contained in Revenue Procedure 94-45, 1994-2 C.B. 684.

**9.6**     **Appointment of the Distribution Trustee**

Confirmation of the Plan shall constitute approval of the appointment of Lucy G. Sikes as the Distribution Trustee of the RWDY Distribution Trust. In the event the Distribution Trustee dies, is terminated, or resigns for any reason, a successor Distribution Trustee shall be appointed in accordance with the terms of the RWDY Distribution Trust Agreement.

38

**9.7    Continuing Court Jurisdiction**

The Bankruptcy Court shall have continuing jurisdiction over matters related to the RWDY Distribution Trust in accordance with Article XI of this Plan and as determined under applicable law.

**9.8    Role of the Distribution Trustee**

Except as otherwise provided herein and in the RWDY Distribution Trust Agreement, the Distribution Trustee shall hold the Trust Assets for the benefit of the RWDY Distribution Trust Beneficiaries. The Distribution Trustee, without further order of the Bankruptcy Court, except as otherwise provided in the RWDY Distribution Trust Agreement, shall have the power and authority to (a) prosecute to judgment or settle, compromise, and resolve the Assigned Causes of Action, (b) calculate and make distributions to the RWDY Distribution Trust Beneficiaries of the proceeds of Trust Assets, (c) liquidate, transfer or otherwise dispose of the Trust Assets or any part thereof other than the Owen Guaranty or any interest therein upon such terms as the Distribution Trustee determines to be necessary, appropriate or desirable, (d) terminate the RWDY Distribution Trust in accordance with the terms of the Plan and the RWDY Distribution Trust Agreement, (e) provide the beneficiaries, annually, with unaudited financial statements, and (f) sell, liquidate, dispose of or abandon Other Trust Assets excluding any Cash. Except as otherwise provided in the RWDY Distribution Trust Agreement, the Distribution Trustee shall be the sole Person entitled to exercise the rights and duties with respect to the RWDY Distribution Trust and the Trust Assets.

**9.9    Nontransferability of RWDY Distribution Trust Interest**

The beneficial interests held by Beneficiaries in the RWDY Distribution Trust shall not be certificated and are not transferable.

**9.10    Compensation of the Distribution Trustee**

The Distribution Trustee shall be entitled to a commission for services provided to the RWDY Distribution Trust in the amount of 2.5% of all (a) Monthly Distribution Amounts transferred to the RWDY Distribution Trust, and (b) all funds transferred to the RWDY Distribution Trust pursuant to Section 6.12.2, *supra*, and (c) all Cash recovered on the Assigned Causes of Action or any Other Trust Assets and distributed to the RWDY Distribution Trust Beneficiaries.

**9.11    Distributions from the RWDY Distribution Trust**

All distributions to the Beneficiaries shall be made in accordance with the terms of this Plan and the RWDY Distribution Trust Agreement by the Distribution Trustee as disbursing agent. The Distribution Trustee shall distribute Cash at periodic intervals, in accordance with the Plan and the RWDY Distribution Trust Agreement.  The Distribution Trustee shall reserve the Initial

Distribution Trust Funds for payment of ongoing costs and expenses of the Distribution Trust and, in her sole discretion, may reserve from the Other Trust Assets such amounts (i) as are reasonably necessary to meet contingent liabilities, (ii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the RWDY Distribution Trust or in respect of the Trust Assets), and (iii) to satisfy other liabilities incurred by the RWDY Distribution Trust in accordance with this Plan or the RWDY Distribution Trust Agreement.

Should the Reorganized Debtor make Monthly Distribution Amount payment in any given month, the Distribution Trustee shall distribute to Beneficiaries, in accordance with the provisions of Article V of this Plan, supra, that portion of the Monthly Distribution Amount received (save and except the 2.5% additional portion of such Monthly Distribution Amount) to Beneficiaries. The Distribution Trustee may distribute to herself the 2.5% portion of the Monthly Distribution Amount received from the Reorganized Debtor as a commission pursuant to Section 9.10, *supra.*

Subject to the reserve determinations allowed within the first paragraph of this Section 9.11, but further subject to the limitations on use expressed in Section 6.12, proceeds derived from the liquidation of Other Trust Assets shall be paid in the following order:

9.11.1 First, in payment of any outstanding fees, costs and expenses of the RWDY Distribution Trust.

9.11.2 Second, in payment of any outstanding but unpaid Administrative and Professional Fee Claims.

9.11.3 Third, in payment of Allowed Claims held by Beneficiaries. For purposes of this subsection, payments shall be made Pro Rata amongst all Beneficiaries, without regard to specific classification under this Plan, and based upon the then outstanding amount of each Beneficiary's Allowed Claim as a proportion of the whole of all Beneficiaries' outstanding Allowed Claims. Payment to Beneficiaries hereunder shall reduce the amount of the Beneficiaries' outstanding Allowed Claims, but shall not reduce or modify the amount of the Monthly Distribution Amount, nor shall the obligation of the Reorganized Debtor to timely remit the Monthly Distribution Amount to the RWDY Distribution Trust be delayed or suspended. The Reorganized Debtor's obligation to timely remit the Monthly Distribution Amount shall continue until such time as all Allowed Claims have been satisfied by the RWDY Distribution Trust in full according to the terms of this Plan and the RWDY Distribution Trust Agreement.

**9.12    Limitation of Distribution Trustee's Liability**

The Distribution Trustee shall not have any liability to any Beneficiary or to any Holder of a Claim for the consequences of her acts and omissions in the performance of duties under the Plan and RWDY Distribution Trust Agreement, except to the extent such consequences are

caused by the Distribution Trustee's intentional and willful wrongdoing or gross negligence. The Distribution Trustee shall have no liability to any Beneficiary or any Holder of a Claim for the consequences of any act or omission that is approved or ratified by the Bankruptcy Court. The Distribution Trustee shall be deemed to have acted in good faith, and shall have no liability to any Beneficiary or the Holder of a Claim, for acting in reasonable reliance upon the advice or opinion of counsel or other professional person retained by the Distribution Trustee. Under no circumstances shall the Distribution Trustee be liable for actions as Distribution Trustee to any Beneficiary or Holder of a Claim or any other Person for an amount in excess of the amount that such Person was or would have been entitled to receive from the RWDY Distribution Trust.

**9.13** **Privileges**

The attorney-client privilege, the attorney work product doctrine and any similar privilege against disclosure, and all other similar immunities, including all documents and confidential documents, including but not limited to confidential and/or privileged internal communications of the directors or officers of the Debtor and any Professionals, which in any way relate to or concern any Assigned Causes of Action and any Claims made against the Estate for which the RWDY Distribution Trust has the right to object to the allowance of same shall vest in the RWDY Distribution Trust upon creation. However, such privileges shall remain vested in the Debtor, and upon the Effective Date, the Reorganized Debtor, with regard to any matters not expressly stated in the foregoing sentence. Notwithstanding the foregoing, the Debtor and Reorganized Debtor shall allow reasonable access to their books and records, including electronically stored information, and information that is not subject to an attorney-client privilege, the attorney work product doctrine, or any similar privilege against disclosure, for purposes of allowing the RWDY Distribution Trust to assert any rights assigned to it in the Plan or the RWDY Distribution Trust.

**RWDY Distribution Trust Tax Treatment**

The RWDY Distribution Trust is intended to be treated for federal income tax purposes as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), for the benefit of the Beneficiaries. The RWDY Distribution Trust shall be a "grantor trust" as defined in Section 671 of the Tax Code with each Beneficiary treated as a "grantor" of the RWDY Distribution Trust. For all U.S. federal income tax purposes, all parties shall treat the transfer of assets or Cash by the Debtor, the Reorganized Debtor, and/or Owen to the RWDY Distribution Trust for the benefit of the Beneficiaries' Claims, whether Allowed on or after the Effective Date, as (i) a transfer of the assets of the Debtor or Reorganized Debtor or Owen, as applicable, directly to the Beneficiaries, followed by (ii) the transfer by such persons to the RWDY Distribution Trust of such assets in exchange for beneficial interests in the RWDY Distribution Trust. Accordingly, the Beneficiaries, whether their Claims are Allowed on or after the Effective Date, shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the applicable assets of the RWDY Distribution Trust.

41

### 9.14 Dissolution of the RWDY Distribution Trust

The Distribution Trustee and the RWDY Distribution Trust shall be discharged or dissolved, as the case may be, at the earlier time of (i) the Distribution Trustee determines, in his sole discretion, that the pursuit of Assigned Causes of Action are not likely to yield sufficient additional proceeds to justify further maintenance of the RWDY Distribution Trust, or (ii) all Distributions of Trust Assets required to be made by the Distribution Trustee under the Plan and RWDY Distribution Trust Agreement have been made; provided, however, that in no event shall the RWDY Distribution Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made, determines that a fixed period extension is necessary to facilitate or complete the recovery on and liquidation of the Trust Assets. Upon dissolution of the RWDY Distribution Trust, any remaining Trust Assets shall be distributed as follows:

A. If all Allowed Claims have been satisfied by the RWDY Distribution Trust in full according to the terms of this Plan and the RWDY Distribution Trust Agreement, then all remaining Trust Assets shall be distributed to the Reorganized Debtor; and

B. If all Allowed Claims have not been satisfied by the RWDY Distribution Trust in full according to the terms of this Plan and the RWDY Distribution Trust Agreement, then all remaining Trust Assets shall be distributed to the Beneficiaries as described herein.

### 9.15 Power & Obligations of the RWDY Distribution Trust

The Distribution Trustee shall have the rights, powers and duties set forth in the RWDY Distribution Trust Agreement, which is incorporated herein by reference.

### Rights of Action.

**9.15.1.1** In accordance with Section 1123(b)(3)(B) of the Bankruptcy Code, the Distribution Trustee shall have a right of action and standing to pursue and may pursue all Claims and Causes of Action relating to the Owen Guaranty and the security therefor and/or the Assigned Causes of Action. Any Distributions provided for in the Plan and the allowance of any Claim for the purpose of voting on the Plan are and shall be without prejudice to the rights of the RWDY Distribution Trust to pursue and prosecute any Assigned Causes of Action as reserved rights of action and without prejudice to (a) the right of action and standing of the Distribution Trustee to pursue the Assigned Causes of Action, or (b) the Reorganized Debtor's right of action and standing to pursue and prosecute any other Claims and Causes of Action, including, but not limited to, the Claims and Causes of Action described in Article XII, *infra,* other than the Assigned Causes of Action. Except as otherwise set forth in the Plan, all Assigned Causes of Action and all Claims and Causes of Action described in Article XII, *infra,* shall survive confirmation of the Plan and the commencement and prosecution of any proceeding on account of such Assigned Causes of Action and all Claims and Causes of Action described in Article XII, *infra,* shall not be barred or limited by res judicata or any estoppel, whether judicial, equitable or otherwise. In reviewing the Plan and the Disclosure Statement, Creditors and other parties should consider that Claims and

42

Causes of Action of the Debtor exist or may exist against them, and that, except as otherwise set forth in the Plan, the Plan preserves all Claims and Causes of Action of the Debtor, and that the Plan authorizes the Distribution Trustee to prosecute all Assigned Causes of Action and authorizes the Reorganized Debtor to prosecute all Causes of Action described in Article XII, *infra*.

9.15.1.2    The Distribution Trustee is specifically authorized to bring lawsuits in connection with the Owen Guaranty, the security for the Owen Guaranty, the dischargeability of the Owen Guaranty and the Assigned Causes of Action in any forum or jurisdiction that the Distribution Trustee so chooses, subject to applicable principles of jurisdiction in such chosen forum.

9.15.1.3    Unless expressly released pursuant to the Plan or a Final Order of the Bankruptcy Court, the failure to identify a Person in this Plan shall not constitute a release of any Claims or Causes of Action (or Assigned Causes of Action) against such Person.

9.15.1.4    The Claims and Causes of Action retained by the Debtor and the Assigned Causes of Action are outlined within Article XII, *infra*, of this Plan.

9.17.1.5    The Distribution Trustee reserves the right to perform a thorough post-confirmation investigation of Assigned Causes of Action of the Debtor and to demand transfer to the RWDY Distribution Trust any Assigned Cause of Action or Avoidance Action not previously identified under Article XII, *infra,* or assigned, but which would be subject to assignment  to the RWDY Distribution Trust as Assigned Causes of Action.

## ARTICLE X
## MODIFICATION OF THE PLAN

**10.1 Amendments Prior to Confirmation Date:** The Debtor may amend or modify the Plan prior to Confirmation, and the Plan, as amended or modified shall become the new Plan of Reorganization.

**10.2 Amendments After Confirmation Date**: The Debtor may modify the Plan before its substantial consummation, provided that the Plan, as modified, meets the requirements of the Bankruptcy Code, and the Court, after notice and hearing, confirms this Plan, as modified.

**10.3 Effect on Claims**: A Holder of a Claim that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, this Plan, as modified, unless, within the time fixed by the Court, such Holder changes its previous acceptance or rejection.

## ARTICLE XI
## RETENTION OF JURISDICTION

**11.1 Purposes**: Notwithstanding entry of the Confirmation Order, this Court shall retain jurisdiction over the Chapter 11 Case for the following purposes:

A. to determine any and all objections to the allowance of Claims or interests, both before and after the Confirmation Date, including any objections to the classification of any Claim or interest;

B. to determine any and all applications for fees and expenses authorized to be paid or reimbursed in accordance with Section 503(b) of the Bankruptcy Code or this Plan;

C. to determine any and all pending applications for the assumption or rejection of executory contracts or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which the Debtor is a party or with respect to which it may be liable; to hear and determine any actions to void or terminate unexpired contracts or leases; and to hear and determine and, if need be, to liquidate any and all claims arising therefrom;

D. to hear and determine any and all actions initiated by the Reorganized Debtor or the RWDY Distribution Trust, whether by motion, complaint or otherwise;

E. to determine any and all applications, motions, adversary proceedings and contested matters pending before the Court on the Confirmation Date or filed or instituted after the Confirmation Date;

F. to modify this Plan, the Disclosure Statement or any document created in connection with this Plan or remedy any defect or omission or reconcile any inconsistency in any Order of the Court, this Plan, the Disclosure Statement or any document created in connection with this Plan, in such manner as may be necessary to carry out the purposes and effects of this Plan to the extent authorized by the Bankruptcy Code;

G. to ensure that the Distributions under the Plan are accomplished in accordance with the provisions of this Plan;

H. to allow, disallow, determine, liquidate or estimate any Claim or interest and to enter or enforce any Order requiring the filing of any such Claim or interest before a particular date;

I. to enter such Orders as may be necessary to interpret, enforce, administer, consummate, implement and effectuate the operative provisions of this Plan, the Confirmation Order and all documents and agreements provided for herein or therein or executed pursuant hereto or thereto including, without limitation, entering appropriate Orders to protect the Debtor from creditor actions;

J. to hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

K. to enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

44

L. to determine such other matters as may arise in connection with this Plan, the Disclosure Statement or the Confirmation Order;

M. to enforce all Orders, judgments, injunctions, and rulings entered in connection with the Chapter 11 Case;

N. to determine all issues relating to the Claims of the IRS, and other taxing authorities, state or federal;

O. to determine any avoidance actions brought pursuant to the provisions of the Bankruptcy Code; and

P. to enter a Final Order and final decree closing the Chapter 11 Case.

**11.2 Exclusive Jurisdiction**: The Court shall have exclusive jurisdiction to resolve all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, consummation, implementation or administration of this Plan, the Confirmation Order, the Disclosure Statement or the RWDY Distribution Trust and **all entities shall be enjoined from commencing any legal or equitable action or proceeding with respect to such matters in any other court or administrative or regulatory body**. This provision shall not alter or change the provisions of Section 5.2.3(iv) addressing the Seacoast Claim.

**11.3 Abstention**: If the Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Case, including the matters set forth in this Article XI, this Article XI shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XII
## CLAIMS AND CAUSES OF ACTION

**12.1 Retention and Enforcement of Causes of Action**: All Assigned Causes of Action, all Causes of Action that could have been brought by a Creditor on behalf of the Debtor, and all Causes of Action created by the Bankruptcy Code not waived or released under the Plan, excluding any right, claims, actions or Causes of Action that has been released or have been deemed to have been waived due to a lack of compliance with any deadline established by an order entered by the Bankruptcy Court, may be pursued by the Debtor prior to the Effective Date. After the Effective Date, Assigned Causes of Action shall be pursued exclusively by the Distribution Trustee and the RWDY Distribution Trust for the benefit of the Creditors, as provided herein, including, but not limited to Assigned Causes of Action arising in and under Chapter 5 of the Bankruptcy Code. Notwithstanding anything to the contrary contained herein, neither the Distribution Trustee nor the RWDY Distribution Trust shall pursue any Avoidance Action or any Causes of Action against any Merchant Cash Advance Lender or MCA Lender, and the Reorganized Debtor shall have the right to pursue all of such Avoidance Actions and Causes of

45

Action against any Merchant Cash Advance Lender or MCA Lender. Prior to the Effective Date, the Debtor shall have the exclusive right to settle or compromise all such Causes of Action, provided that the Debtor shall not have the right to settle or compromise any Causes of Action relating to the Owen Guaranty, or the ancillary documents or the security therefor without the consent of the Distribution Trustee. After the Effective Date, the Distribution Trustee and the RWDY Distribution Trust shall have the exclusive right, right of action, and standing to pursue all Causes of Action relating to the Owen Guaranty, and the ancillary documents and security therefor. Court approval is not required to settle or compromise any collection activities relating to any and all Causes of Action against any customer of the Debtor on account of nonpayment of any account receivable owed by such customer to the Debtor.

**12.2** **Retention and Enforcement of Specific Claims:** Confirmation of the Plan shall operate to preserve and retain the Debtor's and Reorganized Debtor's right, right of action, and standing and, after the Effective Date, the Distribution Trustee's and the RWDY Distribution Trust's right, right of action, and standing to bring and enforce actions on Assigned Causes of Action belonging to the Estate post-confirmation. Upon creation of the RWDY Distribution Trust, all Causes of Action identified in this Section 12.2 (a) which are included as Assigned Causes of Action shall be deemed to be assigned to the RWDY Distribution Trust; and (b) which are not included as Assigned Causes of Action shall be deemed to be retained and/or assigned to the Reorganized Debtor. Such Causes of Action preserved and retained to the Debtor and/or assigned to the Distribution Trustee and the RWDY Distribution Trust shall include the following:

**12.2.1 Assigned Causes of Action:** The Assigned Causes of Action shall include, but not be limited to, the following Causes of Action:

A. The Debtor's and the estate's claims, rights, and Causes of Action against Jason Brazzel on account of payments made to Jason Brazzel for compensation within the period of two years before the Petition Date and for which the Debtor received less than a reasonably equivalent value in exchange which claim would exist under 11 U.S.C. § 547(B)(i) and (ii) (I) and/or (IV), provided, however, that such claim shall not be preserved and retained, but shall be deemed to be compromised, if Jason Brazzel, as the Class 5 Claim Claimholder, opts to have his Claim treated in accordance with Option A of Section 5.5.2 by voting to accept the Plan;

B. The Debtor's and the estate's claims, rights, and Causes of Action against Caesars Palace on account of Caesars Palace's having drafted the sum of $400,000 from the Debtor's bank account;

C. The Debtor's and the estate's claims, rights, and Causes of Action against Tap Rock Operating, LLC for the account owed to the Debtor by Tap Rock Operating, LLC on account of services performed for and goods provided to Tap Rock Operating, LLC by the Debtor or one or more affiliates of the Debtor;

46

D. Causes of Action which are counterclaims and/or defenses relating to any action brought, or Claim asserted, against the RWDY Distribution Trust.

E. Causes of Action of the Debtor related to or in connection with pre-petition lawsuits with respect to which the Debtor was a party, whether or not identified in the Schedules.

F. Causes of Action of the Debtor against local, state and federal taxing authorities for refunds of overpayments or other payments.

G. Contract, tort or equitable Causes of Action of the Debtor that may exist or subsequently arise, whether or not identified on the Schedules.

H. Any Cause of Action arising under Chapter 5 of Title 11.

I. Any Causes of Action assigned to the Debtor or RWDY Distribution Trust.

**12.2.2** **Claims and Causes of Action Retained by the Debtor and Retained and/or Assigned to the Reorganized Debtor:** The Causes of Action retained by the Debtor and retained and/or assigned to the Reorganized Debtor shall include, but not be limited to, the following Causes of Action:

A. The Debtor's and the estate's claims, rights, and Causes of Action against Tailored Fund Cap LLC, Berkovitch & Bouskila, PLLC, Steven Berkovitch, Ariel Bouskila, specifically including the claims, rights, and Causes of Action that are pending in adversary proceeding 20AP-01013 filed with the Court and all claims, rights, and Causes of Action that that arise out of the transactions or occurrences that is the subject matter of that adversary proceeding.

B. The Debtor's and the estate's claims, rights, and Causes of Action against any Merchant Cash Advance Lender or MCA Lender which has not opted to have its claim treated in accordance with the *Class 4 MCA Claims Table* as compromised by voting to accept the Plan, including, without limitation, any objection to the existence, amount, status, and/or priority of such Merchant Cash Advance Lender or MCA Lender's claim, further including, any counterclaim against such Merchant Cash Advance Lender or MCA Lender's claim, any Claim or Cause of Action existing in favor of the Debtor against such Merchant Cash Advance Lender or MCA Lender, any Claim or Cause of Action arising under Chapter 5 of Title 11 against such Merchant Cash Advance Lender or MCA Lender, and any subordination Causes of Action arising under Section 510 of the Bankruptcy Code or other applicable law against such Merchant Cash Advance Lender or MCA Lender.

C. The Debtor's and the estate's claims, rights, and Causes of Action pleaded in adversary proceeding 20AP-01020 filed with the Court and all claims, rights, and Causes of Action that that arise out of the transactions or occurrences that is the subject matter of that adversary proceeding.

47

D. All Causes of Action created by the Bankruptcy Code, including but not limited to, §§ 105, 501, 502, 506, 510, 544, 547, 548, 550, 551, and 1123(b)(5) of the Bankruptcy Code, Rules 3007 and 7001 of the Bankruptcy Rules, that are not compromised, settled, and released as provided in Section 5.4.4 may be asserted against EIN Cap Inc., Fox Capital Group, Queen Funding, Tailored Fund Cap LLC, Tiger Capital Group, Vernon Capital, Jacob Ashley, Everest Insurance, and BDO USA, LLP, McDermott Will & Emery LLP, and/or Rhonda Sue Devor;

E. Any and all other claims, rights, and Causes of Action which the Debtor and/or the estate holds against any Entity for payment due on account of services performed for and goods provided to or for the benefit of such Entity by the Debtor or one or more affiliates of the Debtor.

F. Causes of Action of the Debtor to recover money or property from customers, vendors and/or employees whether based on contract or tort, including without limitation all rights pursuant to Section 502(d) of the Bankruptcy Code to assert and prosecute any Causes of Action of the Debtor against creditors solely for the purpose of establishing that a creditor's Claim against the Estate must be disallowed for failure to repay an avoidable transfer.

G. Equitable subordination Causes of Action arising under Section 510 of the Bankruptcy Code or other applicable law, other than as compromised herein. The foregoing may be supplemented by the Plan Supplement.

H. Objections to Claims and interests.

**12.3** **Enforcement of Claims by the Reorganized Debtor:** To the extent that it is administratively convenient and beneficial to the Reorganized Debtor and/or the RWDY Distribution Trust for the Reorganized Debtor to do so, the Reorganized Debtor may commence and enforce actions on Assigned Causes of Action post-confirmation, but only upon specific written authorization from the Distribution Trustee.

**ARTICLE XIII**
**GENERAL PROVISIONS**

**13.1** **Certain Rights Unaffected**: Except as otherwise provided herein, any rights or obligations which the Debtor's Creditors may have among themselves as to their respective Claims or the relative priority or subordination thereof are unaffected by this Plan.

**13.2** **Headings**: The article and section headings used in this Plan are inserted for convenience and reference only and neither constitute a part of this Plan nor in any manner affect the terms, provisions or interpretations of this Plan.

**13.3** **Severability**: Except as otherwise provided herein, If any term or provision in this Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of this Plan.

48

**13.4 <u>Governing Law</u>**: Except to the extent that the Bankruptcy Code is applicable, the Texas Business Organizations Code and the provisions of the Uniform Commercial Code as same is in effect in the State of Texas shall apply to those matters that affect the Debtor, the Reorganized Debtor, and the property of the Debtor and/or the Reorganized Debtor to which such laws are applicable. In all other instances, the rights and obligations arising under this Plan and any documents, agreements and instruments executed in connection with this Plan (except to the extent such documents, agreements and instruments designate otherwise) shall be governed by, and construed and enforced in accordance with, the laws of the State of Louisiana.

**13.5 <u>Conditions Precedent to Effective Date of the Plan</u>**. The occurrence of the Effective Date of the Plan is subject to satisfaction of the following conditions precedent: (a) the Confirmation Order is a Final Order; (b) the RWDY Distribution Trust Agreement is executed by the Debtor and the Distribution Trustee; (c) the Initial Distribution Trust Funds have been transferred by the Debtor to the RWDY Distribution Trust; (c) the Owen Guaranty, and ancillary documents are executed; and (d) all other documents effectuating the Plan shall have been executed and delivered by the parties thereto, and all conditions to the effectiveness of such documents shall have been satisfied or waived as provided therein.

**13.6 <u>Successors and Assigns</u>**: Except as provided herein, the rights and obligations of any Entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Entity.

**13.7 <u>Discharge of Claims</u>**: Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder and under the RWDY Distribution Trust Agreement shall discharge all existing debts and Claims of any kind, nature, or description whatsoever against the Debtor and the Reorganized Debtor or any of its assets or properties to the extent permitted by Section 1141 of the Bankruptcy Code; upon the Effective Date, all existing Claims against the Debtor and the Reorganized Debtor shall be, and shall be deemed to be discharged; and all Holders of Claims shall be precluded from asserting against the Reorganized Debtor or any of its assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such Holder filed a proof of claim.

**13.8 <u>Discharge of Debtor</u>**: Except as otherwise provided herein or in the Confirmation Order, any consideration Distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtor or any of its assets or properties; and except as otherwise provided herein, upon the Effective Date, the Debtor shall be deemed discharged and released to the extent permitted by Section 1141 of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the Effective Date, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (c) the Holder of the Claim based

upon such debt has accepted the Plan. Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor.  Except as provided herein, pursuant to Section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtor at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Debtor or the property of the Debtor, to the extent it relates to a Claim discharged.

**13.9** **Exculpations**: The members of the Official Committee of Unsecured Creditors of RWDY, Inc. shall not have or incur any liability to any Holder of a Claim for any act, event, or omission in connection with, or arising out of, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

**13.10** **Injunctive Relief**: Except as provided herein, on and after the Confirmation Date, all Creditors and persons acting in concert with them are enjoined and restrained pursuant to Section 105 of the Code from taking any action to collect or enforce any Claim directly or indirectly against the Reorganized Debtor and the RWDY Distribution Trust in any manner inconsistent with the terms contained in the Plan. The discharge granted by this Plan voids any judgment at any time obtained with respect to any debt discharged.

*THE EXCLUSIVE REMEDY FOR PAYMENT OF ANY CLAIM OR DEBT AGAINST THE DEBTOR WHICH IS ADDRESSED IN THIS PLAN SHALL BE PAYMENT OR DISTRIBUTION UNDER AND FROM THE PLAN, THE RWDY DISTRIBUTION TRUST AGREEMENT, AND/OR THE RWDY DISTRIBUTION TRUST.  ALL PARTIES HOLDING CLAIMS, WHETHER ALLOWED OR DISALLOWED, ARE ENJOINED FROM TAKING ANY OTHER ACTION, INCLUDING, BUT NOT LIMITED TO, ANY ACTION TO PROSECUTE OR COLLECT ANY DEBT OR CLAIM AGAINST ANY GUARANTOR, INSIDERS, OFFICER, DIRECTOR, EMPLOYEE, INTEREST HOLDER OR AFFILIATE OF THE DEBTOR, INCLUDING, WITHOUT LIMITATION, OWEN AND THE OWEN AFFILIATED ENTITIES, UNLESS AND UNTIL THERE SHALL BE A COURT ORDER TERMINATING THIS INJUNCTION BECAUSE OF THE OCCURRENCE OF A DEFAULT OF THE REORGANIZED DEBTOR TO MAKE ONE OR MORE DISTRIBUTIONS UNDER THE PLAN REQUIRED TO BE MADE BY THE REORGANIZED DEBTOR  TO THE RWDY DISTRIBUTION TRUST AS DESCRIBED IN SECTION 13.11, INFRA.  TO THE EXTENT NECESSARY, ANY APPLICABLE STATUTE OF LIMITATIONS AGAINST COLLECTION FROM THE RWDY DISTRIBUTION TRUST AND ANY THIRD PARTY IS SPECIFICALLY TOLLED FROM THE PERIOD OF TIME FROM THE PETITION DATE UNTIL THE DATE UPON WHICH THIS INJUNCTION IS TERMINATED.  FURTHER, THE DISTRIBUTION TRUSTEE, THE RWDY DISTRIBUTION TRUST, AND THE REORGANIZED DEBTOR SHALL FORBEAR FROM MAKING DEMAND ON, EXECUTING, OR ATTEMPTING TO COLLECT IN ANY WAY UPON, THE OWEN GUARANTY OR THE PROPERTY AND SECURITY PROVIDED THEREFOR FOR SO LONG AS THE INJUNCTION SET FORTH IN THIS SECTION 13.10 IS IN EFFECT.*

**13.11 Default on Obligations to RWDY Distribution Trust**. In the event that the Reorganized Debtor defaults under any obligation owed the RWDY Distribution Trust under this Plan, the RWDY Distribution Trust may send notice of such default to the Reorganized Debtor at the notice address provided herein by first class mail, postage prepaid with a copy to Seacoast at 1880 N. Congress Ave., Suite 404, Boynton Beach, FL 33426 Attn: Mr. Jay Atkins. If such default is a monetary default (i.e., a failure to pay money) and is not cured within thirty (30) days, the RWDY Distribution Trust may file a motion with the Bankruptcy Court to declare the Plan in default. If such default is a nonmonetary default (i.e., a default that is not a failure to pay money), and the Reorganized Debtor does not commence a cure of such default within thirty (30) days and thereafter diligently continue to pursue same, the RWDY Distribution Trust may file a motion with the Bankruptcy Court to declare the Plan in default. If the Bankruptcy Court, after notice and a hearing, determines that the Reorganized Debtor has defaulted under the Plan, all injunctions against the Reorganized Debtor and Owen shall terminate upon entry of an Order granting any such motion, and further, the RWDY Distribution Trust may seek to enforce and collect against the Debtor, by any legal means available under applicable law, for the full amount of then outstanding Allowed Class 4, 5, and 8 Claims, plus interest which may have or thereafter accrue, provided, however, to the extent any enforcement actions are taken, those actions shall not interfere with or impair Seacoast's rights in connection with either any purchased accounts or any Collateral arising on and after the Petition Date. The RWDY Distribution Trust may further seek to collect on any mortgages and/or security interests it may have in, to and upon property of Owen by any legal means available under applicable law.

**13.12 Notices.** Notices required to be given hereunder shall be given at the following addresses for the following parties:

To the Debtor or Reorganized Debtor:

RWDY, Inc.
2640 Youree Drive, Suite 200
Shreveport, LA 71104
briantowen@aol.com

With a copy to:
Robert W. Raley, Esq.
290 Benton Spur Rd.
Bossier City, LA 71111
rwr@robertraleylaw.com

and

51

Curtis Shelton
P.O. Box 1764
Shreveport, LA 71166-1764
Curtisshelton@arklatexlaw.com

To the Distribution Trustee:

Lucy G. Sikes
Post Office Box 52545
Lafayette, LA 70505-2545
Lucygsikes1@gmail.com

Notice shall be effective upon the earlier of (a) the time that any notice is sent via e-mail, or (b) actual receipt of such notice by the party to whom such notice is given, or (c) three (3) days after being deposited in the United States mail as shown by the United States Postal Service's postmark or by a receipt from the United States Postal Service, with such notice being properly addressed with adequate first-class postage thereon.

Dated: January 20, 2021

RWDY INC., Debtor and Debtor in possession
By: /s/ Brian T. Owen
President

Respectfully Submitted

ROBERT W. RALEY ESQ.

By: /s/ Robert W. Raley
Robert W. Raley, La. Bar #11082
290 Benton Spur Road
Bossier City, LA 71111
Telephone: 318-747-2230
rwr@robertraleylaw.com
Attorney for the Debtor

and

52

AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC

By: Curtis R. Shelton
Curtis R. Shelton
La. Bar Roll No. 17137
Suite 1400, Regions Tower
3333 Texas Street (71101)
P.O. Box 1764
Shreveport, LA 71166-1764
Telephone: (318) 227-3500
Facsimile: (318) 227-3806
E-mail: curtisshelton@arklatexlaw.com
Attorneys for the Debtor